CARL J. HAAS & another[1] *vs.* LEO R. BRETON & others.[2]

Hampden. January 2, 1979. — March 23, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS & LIACOS, JJ.

*Housing Court,* Jurisdiction. *Jurisdiction,* Housing court. *Statute,* Construction.

The Housing Court of the County of Hampden had no jurisdiction under the provisions of G. L. c. 185B, § 3, as amended by St. 1974, c. 78, § 2, of an action by a homeowner to recover damages from a contractor for his negligence in damaging the homeowner's septic tank and in repairing it improperly. [593-601]

CIVIL ACTION commenced in the Housing Court of the County of Hampden on December 26, 1974.

The case was heard by *Peck, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Timothy H. Howes* for Leo Breton.

*Richard A. Gross,* Assistant Attorney General, for the Attorney General, intervener.

*Burton S. Resnic* for the plaintiffs.

QUIRICO, J. This is a civil action brought in the Housing Court of the County of Hampden to recover damages from the defendant Leo R. Breton for his negligence in damaging the plaintiffs' septic tank system and in repairing it improperly. As against Breton, the judge awarded monetary damages and attorney's fees. We conclude that the

---

[1] Suzanne A. Haas.

[2] Other defendants were the city of Westfield, a former inspector of buildings, and a former health director of that city. The judge entered judgments in favor of these three defendants on the merits, and no question of their liability is presently before us.

Housing Court lacked subject matter jurisdiction and we reverse.

The complaint alleged the following facts with regard to Breton. The plaintiffs, husband and wife, purchased a lot, together with a dwelling situated thereon, from Breton and his wife in March of 1972. At the time of purchase, the plaintiffs relied on Breton's good faith, skill, judgment, and express and implied representations that the individual sewage disposal system was adequate, effective, and lawful. The system, which included a septic tank and related installations, was in fact inadequate, ineffective, and unlawful, by reason of which the plaintiffs were ultimately required by the local board of health to replace it at a cost exceeding $2,000 and were subjected to other embarrassment. The plaintiffs further alleged in an amendment to this complaint that Breton had violated G. L. c. 93A, § 2(a).

After a hearing on the merits, the judge found the following facts. Breton had constructed the house but had not finished the grading and seeding when the plaintiffs purchased it and took possession. During the next month, Breton or someone employed by him damaged the distribution box portion of the sewage disposal system while operating grading equipment on the plaintiffs' lot. Breton improperly repaired the box, with the result that the exit pipe emerged only two inches above the bottom instead of the six inches mandated by Title 5, Environmental Code, 310 Code Mass. Regs. 15.10 (1979). This defective repair permitted solids that should have been trapped in the distribution box to clog the distribution pipes in the leaching field, and led to a backup in the system with some seepage to the street. The local director of public health brought a complaint in the Housing Court to require the plaintiffs to correct the problem. The plaintiffs then caused the sewage disposal system to be relocated to another part of their lot at a cost of about $2,500.

The judge awarded damages against Breton in the amount of $1,250 plus $625 attorney fees. Breton ap-

pealed, raising various issues, and we ordered the case transferred to this court on our own motion. See G. L. c. 211A, § 10(A). We allowed a motion by the Attorney General to intervene. In light of the pendency in this court of the somewhat similar case of *Chakrabarti* v. *Marcos S. Marinello Assocs., ante* 419 (1979), we then ordered the parties to brief the question whether the Housing Court had jurisdiction of the subject matter of this action. See Mass. R. Civ. P. 12(h)(3), 365 Mass. 754 (1974); *Boston* v. *Massachusetts Port Auth.*, 364 Mass. 639, 645 (1974). We hold that it did not.

At the time the present action was commenced, the jurisdiction of the Housing Court of the County of Hampden was set forth in G. L. c. 185B, § 3, as amended by St. 1974, c. 78, § 2 (repealed 1978).[3] We quote the jurisdictional portion of this statute in full in the margin below.[4] In so far as is relevant to decision of this case, it gave the Housing Court "common law and statutory jurisdiction

---

[3] As part of an extensive reorganization of the Massachusetts court system, the Legislature recently repealed G. L. c. 185B. See St. 1978, c. 478, § 91. Equivalent provisions, applicable to the Boston and Hampden County Divisions of the Housing Court Department of the Trial Court, now appear in G. L. c. 185C, added by St. 1978, c. 478, § 92.

[4] "The housing court shall have common law and statutory jurisdiction concurrent with the district courts and superior court of all crimes and of all civil actions, arising within the county, under chapter forty A, sections twenty-one through twenty-five of chapter two hundred and eighteen, sections fourteen and eighteen of chapter one hundred and eighty-six and under so much of sections one hundred and twenty-seven A through one hundred and twenty-seven F, inclusive, and sections one hundred and twenty-seven H to one hundred and twenty-seven L, inclusive, of chapter one hundred and eleven, so much of section sixteen of chapter two hundred and seventy, so much of chapters one hundred and forty-three, one hundred and forty-eight, chapter two hundred and thirty-nine, and any other general or special law, ordinance, rule of regulation as is concerned with the health, safety or welfare of any occupant of any place used, or intended for use, as a place of human habitation. The housing court shall also have jurisdiction in equity, concurrent with the district courts, the probate courts, the superior court and the supreme judicial court, of all cases and matters so arising."

... of all civil actions, arising within the county, ... under
so much of [G. L. c. 111, §§ 127A-127F, 127H-127L] ... and
any other general or special law, ordinance, rule or regu-
lation as is concerned with the health, safety or welfare
of any occupant of any place used, or intended for use, as
a place of human habitation."[5]

It is argued that the action was properly before the
Housing Court either because it involved G. L. c. 111,
which generally concerns the State Sanitary Code, or be-
cause it included a claim under G. L. c. 93A, § 9, which
assertedly is an "other general ... law" within the mean-
ing of G. L. c. 185B, § 3. We disagree. We considered the
question of Housing Court jurisdiction under c. 93A in the
*Chakrabarti* case, and we held that "[b]ecause we arrive
at our decision in this case by way of specific legislative
exclusion, we reserve comment on all other questions of
housing court jurisdiction. We indicate no opinion, for
example, regarding housing court jurisdiction over mat-
ters not involving landlords and tenants." *Supra* at 423.
We therefore turn to the alternative argument.

The argument that the Housing Court's jurisdiction
under G. L. c. 111 encompasses the present case is also
untenable. General Laws c. 111, § 127A, empowers the
Department of Public Health to promulgate a State Sani-
tary Code and authorizes local boards of health to adopt
local regulations consistent therewith. Sections 127A and
127B together provide for administrative enforcement,
including imposition of fines and issuance of orders for
cleaning, repairing, vacating, or demolishing offending
structures, with the right of resort to the Superior Court,
if necessary. Sections 127C and 127H create a private
right of action for a residential tenant to seek equitable
relief from code violations in either the District or Superi-
or Court. These two types of actions are the most typical

---

[5] Despite the unparallel structure of G. L. c. 185B, § 3, it is reason-
ably clear that the words "so much of ... as is concerned with" apply
equally to every phrase in between.

of those that may properly be said to arise "under" the sections of c. 111 enumerated in the Housing Court statute and thereby to lie within the jurisdiction of the Housing Court.[6] The present action is of a wholly different character from those described in c. 111. The crucial difference is that the plaintiffs do not seek to enforce compliance with the sanitary code by the owner of residential property.[7] Rather, they seek to recover damages negligently caused to their property by the defendant.

Traditional methods of statutory construction reinforce our conclusion. "A general term in a statute or ordinance takes meaning from the setting in which it is employed. The literal meaning of a general term in an enactment must be limited so as not to include matters that, although within the letter of the enactment, do not fairly come within its spirit and intent." *Kenney* v. *Building Comm'r of Melrose*, 315 Mass. 291, 295 (1943). Accord, *Commonwealth* v. *Baker*, 368 Mass. 58, 67-71 (1975); *Koller* v. *Duggan*, 346 Mass. 270, 273 (1963). "The problem is to determine what particulars that were not mentioned are sufficiently like those that were, in ways that are germane to the subject and purpose of the act, to be made subject to the act's provisions by force of the general reference." 2A C. Sands, Sutherland Statutory Construction § 47.18, at 110 (4th ed. 1973). Our approach, therefore, is to identify the pertinent characteristics of the

---

[6] A private citizen may, of course, initiate criminal proceedings under G. L. c. 111, § 127A, in much the same way as can an administrative agency, by filing a sworn complaint. *Commonwealth* v. *Haddad*, 364 Mass. 795, 798-799 (1974). We construe the phrase "common law and statutory jurisdiction" to refer to the powers of the Housing Court in actions properly before it rather than to confer competence to hear actions not brought pursuant to any statutory authority. See *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 662-663 (1978); *Crocker* v. *Justices of the Superior Court*, 208 Mass. 162, 166-180 (1911).

[7] In contrast, the earlier enforcement action by city health officials, which action precipitated this lawsuit, was properly in the Housing Court under G. L. c. 111, §§ 127A-127B.

specific jurisdictional grants in G. L. c. 185B, § 3, by reference to the subject and purpose of the act creating the Housing Court, and then to determine whether the claim here asserted has the same characteristics.

Chapter 185B was closely modelled on c. 185A, which established the Housing Court of the City of Boston. Chapter 185A, in turn, was the evolutionary product of legislative consideration between 1966 and 1971. See *Police Comm'r of Boston* v. *Lewis*, 371 Mass. 332, 337-339 (1976). At the risk of tedious repetition, we summarize the history of the Housing Court of the City of Boston for the purpose of clarifying our statement in the *Lewis* case that "the General Court did not intend to create a court to handle all problems affecting residents of Boston, but rather its objective was to establish a separate, specialized court with expertise in the area of housing." *Id.* at 337.

The Legislature first grappled with the concept of a Boston Housing Court in 1966, when it appointed a special commission "for the purpose of making an investigation and study of the laws, codes, and regulations governing matters arising out of or connected with the relationship between landlords and tenants in the city of Boston, with a view toward perfecting such laws, codes and regulations and establishing a court, board or agency having such authority as is necessary to afford, after prompt hearing, immediate relief to landlord or tenant on the application of either." Res. 1966, c. 70. The commission filed its report early in 1968. See 1968 House Doc. No. 4498. Perceiving a need for a specialized court to deal with and combat substandard housing, *id.* at 8-15, the commission recommended establishment of a Boston Housing Court to "have jurisdiction over every facet of landlord-tenant relations dealing with substandard dwellings." *Id.* at 16. The draft legislation submitted by the commission would have vested the proposed court with jurisdiction under G. L. c. 111; G. L. c. 143; G. L. c. 186, § 14; St. 1938, c. 479; St. 1939, c. 217; and St. 1962,

c. 314, all of which pertain to the condition of housing in Boston. In addition, the draft would have authorized transfer of summary process actions to the Housing Court for the purpose of permitting condition-related defenses under G. L. c. 239, § 8A, to be raised in that court. See 1968 House Doc. No. 4498, app. A.

Beginning in 1969, various proponents of a Housing Court introduced bills to create one. See 1969 Senate Doc. No. 621; 1970 Senate Doc. No. 518; 1970 Senate Doc. No. 1579; 1970 House Doc. No. 4642; 1970 House Doc. No. 4820; 1971 House Doc. No. 956; 1971 House Doc. No. 4202. Most of these bills contained a preamble stating that "the need for adequately maintained residential housing is of grave public concern, and the existing means of enforcing minimum standards of fitness for human habitation are unsuited to the volume and nature of the task[. A] specialized, expert and remedial judicial procedure is urgently needed to stimulate better housing maintenance and better relations between property owners and occupants for the well-being of the public at large ...." One series of bills incorporated a jurisdictional provision, apparently derived from the 1968 special commission report, mentioning G. L. c. 111, §§ 127A-127K; G. L. c. 186, § 14; and "defenses under" G. L. c. 239, § 8A. 1969 Senate Doc. No. 621, § 4; 1970 Senate Doc. No. 518, § 4; 1970 House Doc. No. 4642, § 4; 1970 House Doc. No. 4820, § 4; 1971 House Doc. No. 956, § 4. Two bills contained a more expansive grant of jurisdiction under G. L. c. 111, §§ 5, 127A-127K; G. L. c. 143; G. L. c. 148; G. L. c. 186, §§ 14, 18; G. L. c. 239; G. L. c. 270, § 16; St. 1938, c. 479; St. 1939, c. 217; St. 1962, c. 314; St. 1967, c. 797; and "all matters and proceedings arising under any general or special laws of the commonwealth and codes, ordinances or regulations in effect in the city from time to time, (1) which affect the use, condition, construction, rehabilitation, maintenance or operation of any building or dwelling used or intended for human habitation and every other structure or condition located within the same metes and bounds of the parcel

of land containing such building or dwelling, [or] (2) which relate to the health, safety, or welfare of any occupant of any building or dwelling used or intended for human habitation . . . ." 1970 Senate Doc. No. 1579, §§ 4A-4C. 1971 House Doc. No. 4202, §§ 4A-4C. Both sets of bills reiterated the theme of controlling substandard housing that the special commission had voiced. In the latter set of two bills, however, the Housing Court was to have jurisdiction over all types of residential eviction cases and over rent control matters.

The recurring pressure for creation of a Boston Housing Court led to the 1971 enactment of c. 185A by St. 1971, c. 843. As initially established, the Housing Court of the City of Boston had jurisdiction of all criminal and civil actions arising under G. L. c. 186, §§ 14, 18, and under "so much of" G. L. c. 111, §§ 127A-127F, 127H-127K; G. L. c. 270, § 16; G. L. cc. 143, 148, 239, and under so much of "any other general or special law, ordinance, rule or regulation as is concerned with" residential health, safety, or welfare, "including, without limiting the generality of the foregoing, so much of [St. 1938, c. 479, the Boston Building Code] and so much of [St. 1962, c. 314, the Boston fire regulation enabling act, and ordinances enacted thereunder] as is so concerned."

To generalize, the Boston Housing Court was initially given jurisdiction over two specifically mentioned classes of cases. The first class, generally involving landlord-tenant disputes, included G. L. c. 186, §§ 14, 18 (landlord's obligation to furnish services and refrain from reprisals); G. L. c. 111, §§ 127C-127F, 127H-127K (tenant's remedies for sanitary code violations); and G. L. c. 239 (summary process). The second class, generally involving a landowner's responsibility for unsanitary or unsafe conditions on his land, included G. L. c. 111, §§ 127A-127B (administrative enforcement of sanitary codes); G. L. c. 143 (building and elevator inspection); G. L. c. 148 (fire prevention); G. L. c. 270, § 16 (refuse disposal); and special laws pertaining to building and fire codes within the city of Bos-

ton. The Housing Court legislation did not limit code enforcement to situations involving residential landlords, and it did not give the Housing Court jurisdiction over every conceivable type of landlord-tenant dispute. Rather, its focus was primarily on laws dealing with the condition of housing and, secondarily, on certain landlord-tenant disputes where housing conditions might frequently be expected to be the subject of controversy. This focus, it will be noted, is only slightly broader than that chosen by the 1968 special commission.

The Legislature enacted c. 185B, creating the Hampden County Housing Court, two years after it established the Boston Housing Court. See St. 1973, c. 591. As proposed and enacted, § 3 of c. 185B contained a jurisdictional grant nearly identical to that contained in c. 185A. Absent was any mention of the special laws pertaining only to Boston. The only addition was a specific reference to the small claims procedure statutes, G. L. c. 218, §§ 21-25, which was presumably designed to mesh with the landlord-tenant venue provisions contained therein. Significantly, the Legislature considered and rejected proposals to include zoning appeals under G. L. c. 40A and actions under G. L. c. 93A within the court's jurisdiction. See 1973 Senate Doc. No. 1576, § 3 (original bill); 1973 Senate Doc. No. 1654, § 3 (committee draft including reference to c. 93A); 1973 House Doc. No. 7124, § 3 (new draft referring to both c. 93A and c. 40A); 1973 House Journal 2353 (floor amendment deleting references to cc. 93A and 40A). Like the act creating the Boston Housing Court, then, the Hampden County legislation focused primarily on housing standards and secondarily on landlord-tenant relations.

We think it quite clear that this case does not implicate residential "health, safety or welfare" in the same sense as do the statutes specifically mentioned in the original versions of cc. 185A and 185B. The present dispute obviously has nothing to do with a landlord-tenant relationship. Cf. *Mayo* v. *Boston Rent Control Adm'r*, 365 Mass.

575, 576 (1974) (Boston Housing Court may review administrative decisions under rent control act, St. 1970, c. 842, § 10). Equally obviously, this dispute is wholly unrelated to any obligation of Breton to maintain his own property in conformity with laws promoting health, safety, and welfare.[8] We must therefore conclude that the present action could not be maintained in the Housing Court.

It is appropriate for us to reemphasize what we said in the *Lewis* case. "There are many conceivable disputes that affect the 'health, safety, or welfare' of occupants of housing, but not all are properly within the ambit of the Housing Court since it is a court of limited jurisdiction." *Police Comm'r of Boston* v. *Lewis*, 371 Mass. 332, 340 (1976). Breton's actions affected the health and welfare of the plaintiffs in some sense, but not in the same sense intended by the Legislature in establishing the Housing Court. To uphold the power of the court to entertain ordinary negligence actions between homeowners and con-

---

[8] The Attorney General employs the following argument to reach the conclusion that the c. 93A claim was properly before the court. G. L. c. 93A, § 2(c), authorizes him to promulgate regulations defining the substantive meaning of § 2(a). His Regulation XV-C, 940 Code Mass. Regs. 3.16(3) (1978), makes violation of any administrative rule aimed at public health or safety an unfair or deceptive practice. Breton violated the State Sanitary Code by damaging the plaintiffs' septic system and thereby violated c. 93A as well. Furthermore, c. 93A is concerned in part with residential health, safety, and welfare. Therefore, the court had jurisdiction.

The principal weakness of this argument is apparent from the purpose-oriented analysis performed in the text. We may note in addition that Breton was not himself in violation of the sanitary code because the plaintiffs had the obligation to keep their land in compliance. However strong the Attorney General's argument might be in a case involving a landlord's unreasonable failure to keep rental premises clean, it is weak in the present context. Moreover, we cannot accept the implicit assumption that a tortious act or breach of promise by a businessman in dealing with a consumer is automatically actionable under c. 93A. See *Mechanics Nat'l Bank* v. *Kileen, ante* 100, 109-110 (1979). In any event, the *Chakrabarti* decision settles the question against the Attorney General in this case, where no question of landlord-tenant relations arises.

tractors would be to dilute the expertise of that court and to delay the resolution of disputes properly before it. As the special commission appointed in 1966 to study the Boston Housing Court put it, "the activity of slumlording and its attendant problems are subtle crimes which must be faced constantly *and without interruption by other types of cases* to produce maximum judicial effect" (emphasis added). 1968 House Doc. No. 4498 at 14. We cannot approve the court's departure from its fundamental purpose and jurisdiction.

We conclude that the Housing Court lacked subject matter jurisdiction over this case. We remand the case to the Housing Court with instructions to vacate the judgment previously entered against Breton. The plaintiffs shall have thirty days in which to petition a single justice of this court for removal and transfer to a proper forum under G. L. c. 211, § 4A. See *Ross* v. *Ross,* 371 Mass. 439, 443 (1976). If the plaintiffs fail to take such action, the Housing Court shall dismiss the action.

*So ordered.*