MICHAEL GOES & others[1] *vs.* JERALD R. FELDMAN, trustee.

Suffolk. May 17, 1979. — July 11, 1979.

Present: GOODMAN, PERRETTA, & KASS, JJ.

*Housing Court,* Jurisdiction. *Jurisdiction,* Housing Court, Consumer Protection Act. *Statute,* Retroactive statute. *Landlord and Tenant,* Security deposit. *Consumer Protection Act,* Damages, Attorney's fees. *Damages,* Consumer protection case. *Payment.*

Statute 1979, c. 72, expressly conferring on the Housing Court jurisdiction to consider G. L. c. 93A claims relating to housing conditions, had retrospective effect to give the court jurisdiction over a c. 93A claim which was heard and decided prior to the effective date of St. 1979, c. 72. [87-91]

---

[1] Paul Pyne and Phillip Vadeboncoeur.

In an action under G. L. c. 93A challenging a landlord's right to withhold a portion of the tenants' security deposit, the judge properly applied multiple damages to the entire security deposit even though the landlord had tendered a check for a portion of the deposit where the check contained a form of restrictive endorsement constituting a release of all claims with respect to the security deposit. [91-92]

CIVIL ACTION commenced in the Housing Court of the City of Boston on February 5, 1976.

The case was heard by *King*, J.

The case was submitted on briefs.

*Daniel Briansky* for the defendant.

*Clyde D. Bergstresser* for the plaintiffs.

KASS, J. While the underlying dispute of the parties, which deals with the appropriate manner in which a landlord may tap a tenant's security deposit, is relatively simple, this case presents threshold jurisdictional questions of some subtlety.

The plaintiffs brought their action under G. L. c. 93A and filed their complaint in the Housing Court[2] of the City of Boston. Although neither party raised a question of subject matter jurisdiction, the fact of a chapter 93A suit filed in a Housing Court sounds an alert in view of recent decisional and statutory developments concerning Housing Court jurisdiction. It is our duty to consider jurisdictional questions on our own motion. *Kisley* v. *Kisley*, 322 Mass. 676, 677 (1948).

First, we summarize the subject of the dispute. In their complaint, the plaintiffs allege that the defendant landlord improperly deducted $125 from their $559.60 security deposit and then attempted to make that deduction nonnegotiable by tendering the balance in the form of a restrictively endorsed check. From the trial judge's find-

---

[2] As part of the reorganization of the Massachusetts court system, the Boston Housing Court became the Boston Division of the Housing Court Department. See St. 1978, c. 478, §§ 91 & 92. The latter section added G. L. c. 185C, in which provisions relating to the jurisdiction and administration of the Housing Court Department now appear.

ings of fact we learn that the back of the check carried a form of endorsement which read: "Return of security deposit on 95 Kilsyth Road, Apartment 2 — by cashing of this check, we release Jerald Feldman and Veronica Realty Trust[3] for all claims resulting from security deposit at 95 Kilsyth Road, Apartment 2, in either equity or law." The reason offered by the defendant landlord for deducting the $125 is that the tenants had stained the carpeting beyond repair and that there were holes in the living room wall which required spackling and repainting. The trial judge found that the carpeting and walls in the apartment which the plaintiffs had occupied were substantially in the same condition at the end of their tenancy as they were at the beginning, fair wear and tear excepted. Relying on G. L. c. 93A, § 9(3) & (4), the trial judge entered judgment in an amount of three times the damages, plus costs and attorneys' fees, which elements added up to $3,187.80.

Twice this year the Supreme Judicial Court has held that the Housing Court of the County of Hampden does not have jurisdiction over c. 93A actions. *Chakrabarti* v. *Marco S. Marinello Associates*, 377 Mass. 419 (1979). *Haas* v. *Breton*, 377 Mass. 591 (1979). Both decisions rested their holdings on specific legislative exclusion in the case of the Hampden Housing Court, although in the *Haas* decision the court discussed at some length the legislative history leading up to the establishment of the Boston Housing Court, emphasizing that the jurisdiction of either Housing Court was limited and that the focus of the court's jurisdiction was on the adjudication of (a) landlord-tenant disputes and (b) a landowner's responsibility for unsanitary or unsafe conditions in so far as these two categories dealt with housing conditions. *Haas* v. *Breton*, 377 Mass. at 594, 596-599. Although close analysis of the *Haas* opinion raises the possibility that the jurisdictional bar to c. 93A actions in the Housing Court may not

---

[3] Jerald Feldman is the sole trustee of Veronica Realty Trust.

extend to landlord-tenant disputes which are otherwise grist for the Housing Court mill, we conclude from the fact that c. 93A jurisdiction was expressly conferred upon the Housing Court by St. 1979, c. 72,[4] that the Housing Court did not have subject matter jurisdiction over c. 93A cases until the enactment of the curative legislation.

There is no doubt that St. 1979, c. 72, was remedial. The *Chakrabarti* and *Haas* decisions came down on March 6, 1979, and March 23, 1979, respectively. A bill "relative to the jurisdiction of the housing court" (1979 Senate Doc. No. 1763) was filed on March 15, 1979, and a substituted bill (1979 House Doc. No. 5857) was passed in both the House of Representatives and the Senate on April 2, 1979 (1979 House Journal at 481; 1979 Senate Journal at 308), and signed by the Governor on April 6, 1979. Section 4 of the act provides: "This act shall take effect upon its passage." From this unusually expeditious movement of the bill to enactment, it is apparent that the Legislature's purpose was to clarify its intent that the Housing Court take cognizance of c. 93A claims which related to housing conditions. We must consider, then, if c. 72 has retrospective effect and can cure the jurisdictional flaw in this otherwise fully litigated case. Although § 4 of c. 72 provides the "act shall take effect upon its passage," that language is not inconsistent with an intent to have the legislation apply retroactively. *Smith* v. *Freedman*, 268 Mass. 38, 41-42 (1929).

Generally statutes are prospective in their operation "unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter, the pre-existing state of the law and the effect upon existent rights, remedies and obligations." *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3

[4] Sections 1 and 2 of c. 72 amended §§ 9 and 11 of G. L. c. 93A, respectively. Section 3 dealt specifically with the jurisdiction of the Housing Court, and it is that section which we consider.

(1914). *Welch* v. *Mayor of Taunton*, 343 Mass. 485, 487 (1962). Judicial skepticism about retrospective effect of statutes is founded on recognition of the unfairness inherent in altering previously acquired rights, and it is buttressed by the constitutional prohibition against ex post facto laws in criminal cases. *Greenaway's Case*, 319 Mass. 121, 123 (1946). See *Dash* v. *Van Kleeck*, 7 Johns. 477 (N.Y. 1811), in which Chief Justice Kent, declining to give retrospective effect to a statute, and eschewing understatement, wrote: "Our constitutions do not admit the power assumed by the *Roman* prince; and the principle we are considering is now to be regarded as sacred." *Id.* at 505. See also Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 692-693 (1960).

Courts came, however, to carve out an exception to the general rule in the case of remedial legislation touching on procedures and practice, rather than substantive rights. *Welch* v. *Mayor of Taunton*, 343 Mass. at 487, and cases cited. "Substantive" and "procedural," as usual, turned out to be slippery handles, and in *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624 (1974), the Supreme Judicial Court undertook to redefine the tests for permissible retroactivity in civil statutes. "At the extreme," Chief Justice Tauro wrote for the court, "no 'retroactive' procedural statute could apply to a case which has been closed, i.e., has gone to judgment and either been affirmed on appeal or not been appealed within the time allowed for appeal." *Id.* at 627. That is not our case. What emerges from *City Council of Waltham* v. *Vinciullo*, at 628, is a direction to look to the state of the proceedings on the effective date of the statute. If they have gone past the procedural stage to which the statute pertains, then there is no retroactive effect; if they have not, there may be retroactive effect. For example, if the statute alters a rule of evidence, it may apply retroactively if the evidentiary phase of the proceeding is open, but not if it is closed. *Smith* v. *Freedman*, 268 Mass. at 40-42 (shift in

burden of proof given retroactive effect). See also *Porter* v. *Clerk of the Superior Court,* 368 Mass. 116, 118 (1975).

What then of jurisdiction? It is fundamental to the judicial process and one could say it is so inextricably tied up with the beginning of a case that there can be no reaching back. On the other hand jurisdiction is a question that can come up—*sua sponte* from the court as here —until the case is closed. Jurisdiction has been conferred retroactively to repair an obviously unintended jurisdictional lapse occurring in the transition of a territory to a State (Nevada). *Freeborn* v. *Smith,* 69 U.S. (2 Wall.) 160, 173-176 (1865). Jurisdiction may be withdrawn by the Legislature after a case has started. *Ex parte McCardle,* 74 U.S. (7 Wall.) 506 (1868). In that celebrated[5] case an 1867 act conferring jurisdiction to hear habeas corpus appeals on the United States Supreme Court was repealed after the case was fully heard in the Circuit Court. Similarly in *Berkwitz, petitioner,* 323 Mass. 41 (1948), a petition for readmission to the bar filed in the Superior Court in 1942 was dismissed for want of jurisdiction by reason of the adoption three years later, in 1945, of rules having the force of statute which deprived the Superior Court of jurisdiction over such matters. The Supreme Judicial Court took note, at 47, that the rule in question affected no substantive or vested rights of the petitioner, who could still present a petition for readmission to the bar in the Supreme Judicial Court.

In the instant case, St. 1979, c. 72, did not confer on the parties new rights. The substantive elements of c. 93A rights as applied in this case are the ability of the plaintiff

---

[5] See, for example, Hart, the Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv. L. Rev. 1362, 1363-1365 (1953). Professor Hart calls to attention that the jurisdiction Congress took from the Supreme Court nonetheless left to the court original habeas corpus jurisdiction and that the Supreme Court is likely to be less tolerant of legislative tampering with jurisdiction in a manner which impinges on the judiciary's constitutional functions.

to recover treble damages and counsel fees and the ability of the defendant to avoid those sanctions by an offer of settlement. These rights were available at all times to the parties in the District Court or the Superior Court. The purpose of St. 1979, c. 72, therefore, deals with the "how" of c. 93A rights rather than the "what" of those rights. More recently, in a case involving not subject matter jurisdiction, but equity powers of the courts under c. 93A, the court, while of the opinion that the power-granting statute clarified judicial authority which already existed, observed also that "the amendment constituted a change which was procedural, and not substantive, and may consequently be applied retroactively to furnish a means of providing relief to persons who had claims because of unfair practices under G. L. c. 93A." *Commonwealth* v. *DeCotis*, 366 Mass. 234, 245 (1974).

A commentator has suggested that, in analyzing whether a statute ought to have retroactive effect, the "court must determine whether at the date of enactment the event or events which have occurred up to that point create a sufficiently strong interest to justify an interpretation that the legislature could not in the absence of specific language have intended to destroy or modify such interest." Greenblatt, Judicial Limitations on Retroactive Civil Legislation, 51 Nw. U.L. Rev. 540, 550-551 (1957). In the case before us we cannot say the defendant had a significant right not to be sued in the Housing Court, as opposed to the District Court or Superior Court. To require that this case and other c. 93A cases launched in the Housing Court before April 6, 1979, be tried all over again senselessly wastes the time of litigants, witnesses, lawyers and courts; presumably the Legislature and the Governor acted with such celerity in the enactment of St. 1979, c. 72, precisely in order to avoid so undesirable a consequence. Against these considerations it seems dogmatic and formalistic to insist that where jurisdiction is absent at the inception of litigation, it cannot subsequently be conferred because the litigation was

a nullity ab initio. We are not prepared thus "to sacrifice good sense to a syllogism." Holmes, The Common Law 36 (1881).[6]

A word of caution is in order. Chapter 72 did not confer general c. 93A jurisdiction on the Housing Court but only so much as is "concerned directly or indirectly with the health, safety, or welfare of any occupant of any place used, or intended for use, as a place of human habitation and the possession, condition, or use of any particular housing accommodations or household goods or services situated therein or furnished in connection therewith." The Legislature, by enacting G. L. c. 186, § 15B, as amended through St. 1975, c. 154,[7] dealt in detail with the rights and duties of parties to a lease of residential property so far as security deposits are concerned. By limiting the freedom of landlords and tenants to contract in this regard, the Legislature manifested a concern for the welfare of tenants in residential property who, as a practical matter, are generally in inferior bargaining positions and find traditional avenues of redress relatively useless; i.e., the legal expense of chasing a security deposit would be more than the amount of the deposit. We have no difficulty concluding, therefore, that a dispute over a security deposit is "concerned . . . with the . . . welfare of [an] occupant of [a] place used, or intended for use, as a place of human habitation and the possession . . . of any particular housing accommodations." The Housing Court, with its staff of housing inspectors, is ideally suited to dispose of security deposit disputes efficiently and fairly.

We may now turn to the merits. Nothing in the record causes us to question the findings of the trial judge that

---

[6] In *Goddard* v. *Frazier*, 156 F.2d 938 (10th Cir.), cert. denied, 329 U.S. 765 (1946), the court held, at 941, that a statute retroactively conferring jurisdiction was not invalid if the remedy did not violate due process. Compare *Walpole* v. *Elliott*, 18 Ind. 258 (1862); *Lane* v. *Nelson*, 79 Pa. 407 (1875); *Willis* v. *Hodson*, 79 Md. 327, 331 (1894).

[7] See now § 15B, as appearing in St. 1978, c. 553, § 2.

the apartment which the plaintiffs had occupied suffered no more than ordinary wear and tear and that the deduction of $125 from the security deposit was unwarranted. The defendant argues that since he made a check of $462.60[8] available to the plaintiffs, no multiple of damages ought to be applied to the entire security deposit because the plaintiffs could have negotiated the check, protested the restrictive endorsement, and gone on to dispute the amount withheld. See *Longo Elec. Co.* v. *Dumais*, 1 Mass. App. Ct. 830 (1973), and cases cited therein. There is apt authority, however, that a person who accepts and collects a check delivered as here, on the express basis that it constitutes a release, accepts the condition, notwithstanding protestations that the check is not so received. *Worcester Color Co.* v. *Henry Wood's Sons Co.*, 209 Mass. 105, 109 (1911). A person who receives a check with what is in substance a release of disputed claims written on it has not, in our opinion, received a tender of payment. He has received a settlement offer, and that is not in accord with the text of G. L. c. 186, § 15B (4). If a landlord determines that he is entitled to retain all or a portion of a security deposit, it is his duty, under the statute, to state with particularity why an amount is being withheld and to return the balance to the tenant without condition.

The judgment included a substantial component on account of a legal fee awarded pursuant to G. L. c. 93A, § 9 (4). The defendant's brief attacks the evidentiary basis for fixing this fee. Determination of what was appropriate compensation for the plaintiffs' counsel was within the experience and expertise of the judge. *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 629 (1978).

*Judgment affirmed.*

---

[8] The security deposit of $559.60, plus interest of $28, i.e., $587.60 less $125.