SUPREME JUDICIAL COURT 
 
 BRANDA PEEBLES & another[1] vs. JRK PROPERTY HOLDINGS, INC., & others.[2]

 
 Docket:
 SJC-13702
 
 
 Dates:
 April 7, 2025 - August 1, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Landlord and Tenant, Security deposit, Repairs, Lease as contract. Real Property, Lease. Contract, Lease of real estate. Words, "Reasonable wear and tear."
 
 

             Certification of questions of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.
            Keith L. Sachs for the plaintiffs.
            Thomas H. Wintner (Mathilda S. McGee-Tubb also present) for the defendants.
            The following submitted briefs for amici curiae:
            Jeffrey C. Turk & Rachelle D. Willard for Greater Boston Real Estate Board.
            Alycia M. Kennedy, David A. Brown, Richard M.W. Bauer, Daniel Ordorica, Lisa Marshall, Jessica Bridgette Drew, & Daniel Jacobson for Community Action Agency of Somerville & another.
            Andrea Joy Campbell, Attorney General, & Jane Alexandra Sugarman, Assistant Attorney General, for the Attorney General.
            DEWAR, J.  The Legislature has enacted detailed provisions governing the circumstances under which a lessor of residential property may deduct charges from a tenant's security deposit at the conclusion of the tenancy.  See G. L. c. 186, § 15B.  As most relevant here, if the lessor follows various required procedures, the lessor may deduct a "reasonable amount necessary to repair any damage caused to the dwelling unit by the tenant . . . , reasonable wear and tear excluded."  G. L. c. 186, § 15B (4) (iii).  The named plaintiffs in this putative class action pending in the United States District Court for the District of Massachusetts are former tenants of apartments owned and managed by the defendants.  The plaintiffs claim that the defendants have violated G. L. c. 186, § 15B (4) (iii), by routinely deducting from tenants' security deposits charges for "reasonable wear and tear."  The Federal court has certified two questions to this court under S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981):
1.  "When a tenant vacates a premises at the end of a lease, under what circumstances, if any, does charging him for painting, carpet repair or similar refurbishment constitute a deduction for 'reasonable wear and tear' in violation of [G. L. c. 186, § 15B (4)]?"
2.  "Does inclusion of a provision in a lease requiring a tenant to have the premises professionally cleaned at the end of the lease or to bear the costs of later repairs constitute a violation of [G. L. c. 186, § 15B (4)]?"
We answer these questions in turn.
            To the first question, we respond that a tenant's reasonable use of a property as a residence under the terms of a lease is expected to result in gradual deterioration of the property over time, and such wear and tear ultimately may require painting, carpet repair, or similar refurbishment at the end of a lease.  The security deposit statute does not permit deductions from a tenant's security deposit to repair such reasonable wear and tear.  G. L. c. 186, § 15B (4) (iii).  Whether the damage to a particular property is "reasonable wear and tear" within the meaning of G. L. c. 186, § 15B (4) (iii), is a fact-specific question depending on all the circumstances, including but not limited to the nature and cause of the damage, the deterioration to be expected as a result of reasonable use during the tenant's or tenants' occupancy under the lease, the condition of the property at the start of the lease, and the length of the occupancy.  
            To the second question, we respond that a lease provision requiring a tenant to have the premises professionally cleaned at the end of the lease, on penalty of bearing the costs of repairs regardless of whether the damage is reasonable wear and tear, conflicts with G. L. c. 186, § 15B (4), because the provision allows for deductions from the security deposit to repair reasonable wear and tear in violation of G. L. c. 186, § 15B (4) (iii).  Such a lease provision is void and unenforceable under G. L. c. 186, § 15B (8).[3]
            Background.  We recite relevant facts from the record to provide context for our responses to the certified questions of law.  See Davalos v. Bay Watch, Inc., 494 Mass. 548, 550 (2024).  
            The lease provisions most relevant to our discussion are identical in each plaintiff's agreement to rent an apartment owned and managed by the defendants.[4]  The leases each were accompanied by an addendum signed by the tenants titled "Move Out Cleaning & Replacement Charges."  The addendum states:  "Resident is required to have the apartment professionally cleaned and carpet cleaned upon move out.  If the apartment is not returned to us in this condition the following charges will be applied."  The addendum then recites charges, for apartments of four different sizes, for "painting (per coat)," "carpet cleaning," "touch-up paint," and "apartment clean."  
            Prefaced by a further statement that "[t]he following charges will be assessed regardless of how long [a] resident occupies the apartment," the addendum also contains lengthy lists of the costs for "replacements" and "cleaning" of various items.  Replacement costs are listed for smaller items ranging from blinds and broiler pans to light bulbs and shower heads, as well as for more expensive items such as exterior doors, toilets, and "bathtub/shower resurface."  For some items, such as carpet replacement, no specific charge is listed, and the addendum instead states that the tenant is liable for the "[a]ctual [c]ost."  The "cleaning charges" include, among others, charges for cleaning "Doors/Frames –- each," "Windows –- each," "Walls (Wash) –- each," "Cabinets (Bathroom)," "Bathtub – each," "Shower Wall Tile," "Mirrors –- each," "Toilet –- each," "Sink (Kitchen/Bath) –- each," "Faucets (Kitchen/Bath) –- each," "Cabinets (Kitchen)," "Range Top," and "Refrigerator."      
            Neither of the two plaintiffs made use of professional cleaning services before moving out.  The defendants deducted $115 from plaintiff Branda Peebles's security deposit for "[t]ouch [u]p [p]aint" and "[c]arpet [c]lean per [l]ease."  From plaintiff Joshua Berger's security deposit, the defendants deducted $52.40 for an unpaid utility bill but made no other deductions.
            In 2019, the plaintiffs filed a complaint in the Superior Court against the defendants on behalf of themselves and all others similarly situated.  They claimed that the defendants routinely made deductions from tenants' security deposits to remedy "reasonable wear and tear" in violation of G. L. c. 186, § 15B (4) (iii); failed to return those portions of security deposits "within thirty days after the termination of the tenancy" in violation of G. L. c. 186, § 15B (6) (e); and were liable for "three times the amount of" the unlawfully retained portions of security deposits under G. L. c. 186, § 15B (7).  The complaint also alleged that the plaintiffs were entitled to the return of the entirety of their security deposits under G. L. c. 186, § 15B (6) (c), because the defendants unlawfully required tenants to agree in the lease addendum to allow deductions for reasonable wear and tear, in conflict with G. L. c. 186, § 15B (4).  The complaint further alleged that these violations of G. L. c. 186, § 15B, constituted "unfair or deceptive acts or practices" by the defendants in violation of G. L. c. 93A, § 2.  
            In 2023, the defendants removed the case to Federal court.  The plaintiffs moved for class certification, and all parties moved for summary judgment.  The judge denied the parties' motions without prejudice and on his own motion certified to this court the questions set forth above.  
            Discussion.  The certified questions call for us to interpret G. L. c. 186, § 15B (4).  "[W]e apply the 'general and familiar rule . . . that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished."  Meikle v. Nurse, 474 Mass. 207, 209-210 (2016), quoting Lowery v. Klemm, 446 Mass. 572, 576-577 (2006).  "[W]e look to the language of the entire statute, not just a single sentence, and attempt to interpret all of its terms 'harmoniously to effectuate the intent of the Legislature.'"  Phillips v. Equity Residential Mgt., L.L.C., 478 Mass. 251, 257 (2017), quoting Commonwealth v. Hanson H., 464 Mass. 807, 810 (2013).  "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent."  Ryan v. Mary Ann Morse Healthcare Corp., 483 Mass. 612, 620 (2019), quoting Ciani v. MacGrath, 481 Mass. 174, 178 (2019). 
            General Laws c. 186, § 15B (4), forms part of the security deposit statute's "elaborate scheme of rights and duties to prevent abuses and to insure fairness to the tenant."  Ryan, 483 Mass. at 616, quoting Meikle, 474 Mass. at 212.  This subsection provides in part that a "lessor shall, within thirty days after the termination of occupancy . . . , return to the tenant the security deposit or any balance thereof."  G. L. c. 186, § 15B (4).  A lessor may, however, make three specified categories of deductions:  for (i) unpaid rent or water charges; (ii) unpaid real estate taxes in certain circumstances; or, as most relevant here, (iii) "a reasonable amount necessary to repair any damage caused to the dwelling unit . . . , reasonable wear and tear excluded."  G. L. c. 186, § 15B (4) (i)-(iii).   
            To make a security deposit deduction for repairs, the lessor is required to provide to the tenant, within thirty days of the end of the occupancy, "an itemized list of damages, sworn to by the lessor or his agent under pains and penalties of perjury, itemizing in precise detail the nature of the damage and of the repairs necessary to correct such damage, and written evidence, such as estimates, bills, invoices or receipts, indicating the actual or estimated cost thereof."  G. L. c. 186, § 15B (4) (iii).  Except in the case of "renewed damage" by a tenant following a repair, no deduction may be made for damage "listed in the separate written statement of the present condition of the premises . . . required to be given to the tenant prior to the execution of the lease."  Id., citing G. L. c. 186, § 15B (2) (c).  The statute cautions that it does not limit a lessor's right to recover damages from a tenant if the tenant "wilfully or maliciously destroys or damages the [lessor's] real or personal property" and the cost of the resulting repairs "exceeds the amount of [the] security deposit."  G. L. c. 186, § 15B (4) (iii).
            General Laws c. 186, § 15B (4), concludes by stating:  "No deduction may be made from the security deposit for any purpose other than those set forth in this section."  The statute elsewhere provides that "[t]he lessor shall forfeit his right to retain any portion of the security deposit for any reason . . . if he," among other violations, "fails to furnish to the tenant within thirty days after the termination of occupancy the itemized list of damages, if any, in compliance with the provisions of this section," or "fails to return to the tenant the security deposit or balance thereof to which the tenant is entitled . . . within thirty days after termination of the tenancy."  G. L. c. 186, § 15B (6) (b), (e).  The statute also prescribes forfeiture of the right to retain any portion of the security deposit if a lessor "uses in any lease signed by the tenant any provision which conflicts with any provision of this section and attempts to enforce such provision or attempts to obtain from the tenant or prospective tenant a waiver of any provision of this section."  G. L. c. 186, § 15B (6) (c).  And the statute provides that "[a]ny provision of a lease which conflicts with any provision of this section . . . shall be deemed to be against public policy and therefore void and unenforceable."  G. L. c. 186, § 15B (8).
            1.  Reasonable wear and tear.  We first address the Federal court's question as to the "circumstances, if any," when charges "for painting, carpet repair or similar refurbishment constitute a deduction for 'reasonable wear and tear' in violation of" G. L. c. 186, § 15B (4).[5]
            The statute does not define "reasonable wear and tear."  See G. L. c. 186, § 15B (4) (iii).  "Where, as here, the statutory language is not defined, we ordinarily give the words their usual and accepted meanings, which we derive 'from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions.'"  Wallace W. v. Commonwealth, 482 Mass. 789, 796 (2019), quoting Scione v. Commonwealth, 481 Mass. 225, 235 (2019).  "We consider the statute in light of the common law" and "do not construe a statute 'as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed.'"  Suffolk Constr. Co. v. Division of Capital Asset Mgt., 449 Mass. 444, 454 (2007), quoting Riley v. Davison Constr. Co., 381 Mass. 432, 438 (1980).
            We have not had occasion to interpret the phrase "reasonable wear and tear" in this statute since the Legislature added the phrase in 1970.  See St. 1970, c. 666, § 1.  The term "wear and tear" is, however, a familiar one.  It connotes "[d]eterioration caused by ordinary use; the depreciation of property resulting from its reasonable use."  Black's Law Dictionary 1915 (12th ed. 2024).  Under our common law, a tenant is not liable for wear and tear from ordinary use but is liable for voluntary waste if the tenant damages the property through unreasonable use.  See Bech v. Cuevas, 404 Mass. 249, 254 (1989); Gade v. National Creamery Co., 324 Mass. 515, 517 (1949), citing Chalmers v. Smith, 152 Mass. 561, 564 (1891); E.G. Daher & H. Chopp, Landlord and Tenant Law § 20:1 (3d ed. 2000), and cases cited.  The Legislature's additional qualification in G. L. c. 186, § 15B (4) (iii), that the degree of wear and tear be "reasonable" means, under the definition of that word most relevant here, wear and tear that is "[w]ithin sensible or rational limits; not excessive; moderate."  Black's Law Dictionary 1520 (12th ed. 2024).    
            Our common-law cases concerning commercial leases shed light on the meaning of reasonable wear and tear, in the context of leases requiring the tenants themselves to maintain the premises in good repair, with an exception for "reasonable wearing and use."  Codman v. Hygrade Food Prods. Corp., 295 Mass. 195, 196 (1936).  See also, e.g., Kaplan v. Flynn, 255 Mass. 127, 129 (1926).[6]  In Codman, 295 Mass. at 196-197, following a jury verdict for the tenant in a lessor's action to recover for water damage, we noted that the evidence warranted findings that the parties' contemplated use of the building for manufacturing sausage "necessarily" entailed "[d]ampness in the building and the presence of some water on the floors."  We held that the judge had properly admitted evidence regarding the property's condition at the start of the one-year lease -- which followed a twelve-year lease by a different sausage manufacturer -- because "whether a state of disrepair apparent in a particular part of the building was caused in whole or in part by reasonable wear and use during the tenant's occupancy would ordinarily involve the consideration of the state of repair of that same part of the building when the occupancy began."  Id. at 197, 200-201.  
            And in Kaplan, 255 Mass. at 128, a building was leased for use as a movie theater.  After eight and one-half years "in daily use by an average of fifteen hundred patrons every day," the wear on the building was "severe" and consisted "chiefly in a general need of painting," including in various areas used by patrons.  Id. at 129.  In affirming the Superior Court's ruling in favor of the tenant to restrain the landlord's attempted forfeiture of the lease, we held that the covenant to keep the premises in good tenantable repair, "reasonable use and wear . . . excepted," had to "be considered with reference to the use the premises were to be put" and noted a factual finding that "the use and wear" of movie theaters was "recognized" to be "severe."  Id. at 128-130.  
            The question whether damage is reasonable wear and tear thus is a fact-specific one depending on all the circumstances.  These include but are not limited to the nature and cause of the damage, the condition of the property at the start of the lease, the use for which a property was leased, the deterioration of the property to be expected as a result of its reasonable use for that purpose, and the length of the occupancy.  See Codman, 295 Mass. at 196-197; Kaplan, 255 Mass. at 128-129.
            The premises here were leased for use as residences.  See Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 197 (1973) (lease of residential property is contract "to provide a dwelling suitable for habitation").  A dwelling's condition is expected to deteriorate over time as a tenant moves furniture in and out; cooks in the kitchen; bathes in the bathroom; relies on appliances with limited lifespans; and otherwise makes reasonable use of the property during the tenant's occupancy under the terms of the lease, including simply by walking on the floors, beside the walls, and through the doorways, day after day.  This "gradual deterioration" from ordinary use is the wear and tear for which a tenant is not liable at common law, 52 C.J.S. Landlord & Tenant § 559, at 527 (2024), and for which, so long as the degree of deterioration is reasonable, the lessor cannot make a deduction from the tenant's security deposit under G. L. c. 186, § 15B (4) (iii). 
            For example, if newly refinished floors again need finishing "after about one year to eliminate the scuffmarks made by walking on them" because a tenant chose not to use rugs and was not required to do so under the lease, "the physical change in the floors has been brought about by normal wear and tear in using the leased property in a reasonable manner."  Restatement (Second) of Property:  Landlord & Tenant § 12.2 comment d, illustration 2 (1977).  So too for a reasonable degree of scuffing on walls, marks on doorways, and stains and other signs of wear on carpets and other surfaces expected to show their age over time with reasonable use.  And the longer an occupancy lasts, the more wear and tear is reasonably to be expected, eventually potentially amounting to severe wear and tear that is nonetheless reasonable in view of the length of the lease and contemplated use of the premises.  See Kaplan, 255 Mass. at 128-129.  If, however, the damage is the result of unreasonable use -- for example, overloading an old and cracked floor with heavy objects that cause a collapse -- such damage exceeds reasonable wear and tear.  See Gade, 324 Mass. at 516-517 (such evidence sufficient to prove voluntary waste). 
            This interpretation of the statute accords with the only published Massachusetts appellate decision brought to our attention that squarely addresses wear and tear in the context of a residential lease, albeit without discussing G. L. c. 186, § 15B (4) (iii).  In Goes v. Feldman, 8 Mass. App. Ct. 84, 86 (1979), the Appeals Court affirmed a judgment in favor of the tenant under G. L. c. 93A where the lessor had sought to deduct from the security deposit $125 because "the tenants had stained the carpeting beyond repair," and "there were holes in the living room wall which required spackling and repainting."  A Housing Court judge "found that the carpeting and walls in the apartment . . . were substantially in the same condition at the end of their tenancy as they were at the beginning, fair wear and tear excepted."  Id.  The Appeals Court held that the record supported this conclusion, id. at 91-92, evidently agreeing that, in the circumstances presented, stains requiring replacement of the carpet and holes requiring spackling amounted to reasonable wear and tear to be expected from the tenants' use of the apartment as a residence.  
            Because the question whether damage is reasonable wear and tear thus depends on all the relevant circumstances, we cannot respond to the Federal court's first certified question by setting the bright-line rule requested by the plaintiffs, that all security deposit deductions for damage requiring cleaning or painting are deductions for reasonable wear and tear in violation of G. L. c. 186, § 15B (4).  Rather, we respond that a tenant's reasonable use of a property as a residence is expected to result in gradual deterioration that ultimately may require painting, carpet cleaning or repair, or other refurbishment at the end of the lease, and security deposit deductions for such reasonable wear and tear violate the statute.  Whether damage to a particular property is in fact "reasonable wear and tear" within the meaning of G. L. c. 186, § 15B (4) (iii), depends on all the circumstances, including but not limited to the nature and cause of the damage, the deterioration to be expected as a result of the tenant's or tenants' reasonable use of the property under the terms of the lease, the condition of the property at the start of the lease, and the length of the occupancy.[7]
            2.  Professional cleaning requirement.  We next turn to the second certified question:  whether "inclusion of a provision in a lease requiring a tenant to have the premises professionally cleaned at the end of the lease or to bear the costs of later repairs constitute[s] a violation of [G. L. c. 186, § 15B (4)]."  
            We answer this question in light of the leases at issue here.  The signed addendum to each lease states, as set forth above:  "Resident is required to have the apartment professionally cleaned and carpet cleaned upon move out.  If the apartment is not returned to us in this condition the following charges will be applied."  The addendum then lists charges for "painting (per coat)," "touch-up paint," carpet cleaning, cleaning the entirety of the unit, and replacing or cleaning various items within the apartment.  We understand the reference to "repairs" in the certified question as comprising these charges listed in the addendum, because they are the costs a tenant will bear if the apartment is not returned in "professionally cleaned" condition.
            This lease provision conflicts with G. L. c. 186, § 15B (4).  The provision states that, if an apartment is not returned in "professionally cleaned" condition, deductions for painting, carpet cleaning, and cleaning or replacement of various other items "will be applied," without any apparent allowance for reasonable wear and tear on the apartment over the course of the tenant's occupancy.  Underscoring the lack of allowance for reasonable wear and tear, the addendum further specifies that the listed cleaning and replacement charges "will be assessed regardless of how long [a] resident occupies the apartment."  Yet G. L. c. 186, § 15B (4) (iii), permits a deduction for repairs only if, among other prerequisites, the damage to be repaired is not "reasonable wear and tear," and the statute forbids deductions from the security deposit "for any purpose other than those set forth in this section," G. L. c. 186, § 15B (4).  The lease provision thus conflicts with the statute, because it provides for security deposit deductions for repairs such as painting or carpet replacement that may, depending on the circumstances, be repairs of reasonable wear and tear.  See Goes, 8 Mass. App. Ct. at 86.
            As the plaintiffs argue, because this lease provision conflicts with the security deposit statute, it is unenforceable.  The statute provides that "[a]ny provision of a lease which conflicts with any provision of this section . . . shall be deemed to be against public policy and therefore void and unenforceable."  G. L. c. 186, § 15B (8).  See Hampshire Village Assocs. v. District Court of Hampshire, 381 Mass. 148, 152-153, cert. denied sub nom. Ruhlander v. District Court of Hampshire, 449 U.S. 1062 (1980), quoting Goes, 8 Mass. App. Ct. at 91 (Legislature "limit[ed] the freedom of landlords and tenants to contract" out of "concern for the welfare of tenants . . . generally in inferior bargaining positions," for whom "legal expense of chasing a security deposit would be more than the amount of the deposit").
            The defendants' attempt to defend the enforceability of the lease provision is unavailing.  They chiefly argue that the requirement to have the apartment professionally cleaned relates to conduct "before the end of the tenancy" and thus is "not behavior that is regulated by" the security deposit provisions in G. L. c. 186, § 15B (4).  But the disputed lease provision is not merely a stand-alone requirement that a tenant have an apartment professionally cleaned at the conclusion of the tenant's occupancy.[8]  Rather, the provision requires that the apartment be returned in "professionally cleaned" condition, on penalty of a host of security deposit deductions to repair various forms of damage that may be reasonable wear and tear.  As such, the provision is in conflict with the statute and unenforceable under G. L. c. 186, § 15B (8).
            The defendants further argue that, even if this lease provision conflicts with G. L. c. 186, § 15B (4), the mere existence of the provision in the lease does not entitle the plaintiffs to a remedy under the security deposit statute.  They acknowledge that the statute includes a remedy -- forfeiture of the right to retain any portion of the security deposit -- if a lessor "uses in any lease signed by the tenant any provision which conflicts with any provision of this section and attempts to enforce such provision or attempts to obtain from the tenant or prospective tenant a waiver of any provision of this section" (emphases added).  G. L. c. 186, § 15B (6) (c).  They contend, however, that no such attempted enforcement or attempt to obtain a waiver occurred here.  The Federal court has not asked us to address whether the defendants' alleged conduct violated this statutory provision, and the plaintiffs have not briefed these issues.  We therefore express no view on them.
            Conclusion.  Our answer to the first certified question is that a tenant's reasonable use of a property as a residence is expected to result in gradual deterioration that ultimately may require "painting, carpet repair or similar refurbishment" at the end of the lease, and security deposit deductions for repairs of such reasonable wear and tear violate G. L. c. 186, § 15B (4).  Whether damage to a particular property is "reasonable wear and tear" within the meaning of G. L. c. 186, § 15B (4) (iii), is a fact-specific question depending on all the circumstances, including but not limited to the nature and cause of the damage, the deterioration to be expected as a result of reasonable use during the tenant's or tenants' occupancy under the terms of the lease, the condition of the property at the start of the lease, and the length of the occupancy.  
            Our answer to the second question is that a lease provision requiring the tenant to leave the premises in "professionally cleaned" condition at the end of the lease, on penalty of security deposit deductions for the cost of painting, cleaning, or other repairs regardless of whether the damage is reasonable wear and tear, conflicts with G. L. c. 186, § 15B (4), because the statute does not permit deductions from a security deposit for repairs of "reasonable wear and tear," G. L. c. 186, § 15B (4) (iii).  Thus in conflict with the statute, such a lease provision is void and unenforceable under G. L. c. 186, § 15B (8).
            The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court.  The clerk, in turn, will transmit one copy under the seal of this court to the clerk of the United States District Court for the District of Massachusetts, in answer to the certified questions, and also will transmit a copy to each party.
So ordered.
 
footnotes

 
            1 Joshua Berger.
            2 Stevens Pond Apartments Property Owner, LLC; and One Webster Apartments Property Owner, LLC.
            3 We acknowledge the amicus briefs submitted by Community Action Agency of Somerville and Friendly House, Inc., in support of the plaintiffs and by the Greater Boston Real Estate Board in support of the defendants.  We further acknowledge the letter submitted by the Attorney General as amicus curiae.
            4 Although the complaint distinguishes among the defendants' respective roles in the alleged unlawful conduct, these distinctions are not relevant for purposes of responding to the Federal court's certified questions, and we therefore refer to the defendants collectively for simplicity's sake.
            5 We understand this certified question to relate to the nature of "reasonable wear and tear" itself -- the issue briefed by the parties before us -- and therefore do not address violations that may occur if a lessor does not adhere to the statute's other requirements for making a deduction for repairs, such as the sworn detailed list of itemized damages.  See G. L. c. 186, § 15B (4) (iii).  
            6 The leases at issue here, by contrast, contemplate that the lessor will make repairs.  The commercial lease cases nevertheless illuminate the nature of reasonable wear and tear.
            7 In aid of this fact-specific inquiry, the Legislature, as described, requires a lessor collecting a security deposit to furnish a tenant with a "written statement of the present condition of the premises" at the outset of the lease and then, if the lessor wishes to make a deduction for repair of damage, a sworn list "itemizing in precise detail the nature of the damage and of the repairs necessary to correct such damage, and written evidence, such as estimates, bills, invoices or receipts, indicating the actual or estimated cost thereof."  G. L. c. 186, § 15B (2) (c), (4) (iii).
            8 Accordingly, we express no view on such a provision