POLICE COMMISSIONER OF BOSTON *vs.* ANNIE MAE LEWIS & others.[1]

Suffolk.    May 5, 1976. — November 15, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Jurisdiction,* Housing court.  *Housing Court,* Jurisdiction.  *Statute*, Construction.

Discussion of the jurisdiction granted by G. L. c. 185A to the Housing Court of the City of Boston.  [336-340]

The Housing Court of the City of Boston lacked subject matter jurisdiction over a complaint by tenants of a housing project alleging a denial of police protection.  [340-341]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on November 26, 1975.

The case was reserved and reported by *Reardon,* J.

*Nicholas Foundas (Herbert P. Gleason,* Corporation Counsel, with him) for the Police Commissioner of Boston.

*James H. Wexler (William C. Osborn* with him) for Annie Mae Lewis & others.

HENNESSEY, C.J.    On September 3, 1975, a judge of the Housing Court of the City of Boston issued a preliminary injunction requiring the police commissioner of the city of Boston "to provide 24-hour security protection to the persons and residences of the named Plaintiffs and of the

[1] Ernestine Horne and Freda McWhorter.

class."[2] The commissioner, plaintiff in the case now before us, filed a petition in the Supreme Judicial Court for relief from the interlocutory order of the Housing Court. See G. L. c. 231, § 118. A single justice of this court reserved and reported the case without decision for determination by the full court.

The plaintiff presents two arguments to this court. First, he contends that the Housing Court lacks subject matter jurisdiction over this case in view of the jurisdictional grant set forth in G. L. c. 185A, § 3, and, therefore, the plaintiff's motion to dismiss should have been granted by the judge of the Housing Court. Second, the plaintiff maintains that the judge abused his discretion by issuing the preliminary injunction of September 3, 1975. We do not address this second argument, for we hold that the Housing Court does not have jurisdiction over this matter. Nevertheless, as will be seen, we do not order that the injunction shall be dissolved. Rather, we remand the case to the single justice for a determination on the merits in the county court or, after transfer in the discretion of the single justice, in the Superior Court.

The facts which led to this action are as follows. On August 26, 1975, black tenants of two public housing projects in East Boston, defendants in the case now before us, commenced a class action in the Housing Court naming as defendants, inter alia, the administrator of the Boston Housing Authority, the plaintiff, the Boston Housing Authority, and the Boston police department. The complaint seeks injunctive and declaratory relief and damages "to secure the protection of black public housing tenants in East Boston from racial harassment and threats and injury to their lives and property." The tenants allege that the plaintiff and other officials failed to protect residents from

---

[2] The protection was to consist of "the continual presence of one or more police officers or security guards in the immediate vicinity of each residence and sufficient numbers of police or guards in the area around the residences in order to deter persons intent upon perpetrating physical violence, extreme harassment and vandalism away from the residences."

mob attacks and failed to arrest white persons who were throwing rocks at the residents' homes, and that such dereliction of duty constitutes a violation of State and Federal statutes and the equal protection clause of the Fourteenth Amendment to the United States Constitution.[3]

A hearing was held on August 26, 1975, on the tenants' motion for a temporary restraining order. On the basis of the complaint and three accompanying affidavits, the judge issued a temporary restraining order which, in part, required the plaintiff to provide twenty-four hour police protection, as defined in the order, for the residents' apartments.

On August 28 and 29, 1975, a hearing was held in the Housing Court on the tenants' application for a preliminary injunction. The transcript of this hearing, including the testimony of seven witnesses for the tenants and three police officers for the plaintiff, as well as the findings and rulings of the judge are part of the record now before us on appeal.

The testimony of the tenants' witnesses indicated that black families in two adjoining housing projects in East Boston have been subjected to harassment, threats and attacks by white youths. Although there was testimony about scattered incidents over a period of time, the main thrust of the testimony concerned events that occurred on August 25 and 26, 1975. The sequence of events, during these two days, as culled from the testimony at the hearing, may be summarized as follows.

During the early evening of August 25, bands of white youths carrying rocks, bottles and baseball bats were seen

---

[3] The tenants allege that the plaintiff and other officials interfered with their right to quiet enjoyment in violation of G. L. c. 186, § 14, and that, by failing to disperse rock throwers, the police officers did not fulfil their statutory duty under G. L. c. 269, § 1. Further, the tenants claim that the officials' failure to perform their duty to protect the black residents from attack constitutes a deprivation of their rights under the Fair Housing Act, 42 U.S.C. § 3601 et seq. (Supp. I 1971), 42 U.S.C. §§ 1981-1983 (Supp. I 1971), and the equal protection clause of the Fourteenth Amendment.

roaming around the two housing projects. Some of these youths broke windows at the homes of black families and attacked a group of whites and blacks who were attempting to assist a black tenant. Several in the group were injured by flying rocks. One victim testified that, as the stoning continued, the onlookers, including Boston police officers, clapped and chanted.

During these incidents, despite calls for help by black residents, the police appeared to take little action to quell the disturbances. An attempt was made by the police in the early evening to disperse the groups and to confiscate the weapons, but the situation did not improve. Two white youths were arrested. According to the rulings of the judge, the small number of policemen and the limited response by those present was "totally unreasonable" in view of the extreme violence, harassment and vandalism that was occurring.

During the early hours of August 26, one of the named tenants, Annie Mae Lewis, and several of her friends who had come to her apartment to aid her were ordered by police to disperse. Several witnesses testified that none of these individuals was throwing rocks or sticks, although a police officer testified otherwise. On refusing to disperse, six persons at the Lewis apartment were arrested for disorderly conduct, apparently in an effort by the police to remove them as a target of the disorders. As the arrests were taking place, surrounding crowds of whites yelled racial epithets.

After the hearing, the judge found that the police had not discharged their responsibility to maintain order and that their failure to take reasonable measures to protect black tenants and other persons constituted a denial of equal protection of the laws. The judge entered an order, see note 2 *supra*, requiring the plaintiff to provide twenty-four hour security protection to the persons and residences of the named tenants and of the class until such time as the need no longer exists.

Subsequently, the plaintiff's motion for a stay of the preliminary injunction was denied by the judge. There-

after, the plaintiff filed a petition under G. L. c. 231, § 118, for relief from the interlocutory order of the Housing Court. Following a hearing before a single justice, the case was reserved and reported to this court.

Initially, we note that, despite the defendants' contention, this case is properly before us. In reaching this conclusion, we need not decide if Mass. R. A. P. 6 (a), 365 Mass. 848 (1974), applies to a petition brought under G. L. c. 231, § 118, or if, as argued by the plaintiff, Rule 6 (a) governs only an appeal from a final judgment (opposed to an interlocutory order), see *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.,* 367 Mass. 464, 468-471 (1975), for even if we assume that Rule 6 (a) is applicable, we believe that the plaintiff has complied with that rule.

We now turn to the plaintiff's first contention that his motion to dismiss should have been granted on the ground that the Housing Court lacks subject matter jurisdiction over this matter. We conclude that the plaintiff's position is supported by a reading of the statute which established the Housing Court of the City of Boston (G. L. c. 185A) and is consistent with the legislative history relating to the creation of that court. Accordingly, we decide that the issuance of a preliminary injunction in this case went beyond the statutory powers granted to the Housing Court under G. L. c. 185A, § 3.

As we noted in *West Broadway Task Force, Inc.* v. *Commissioner of Dep't of Community Affairs,* 363 Mass. 745, 753 (1973), the Housing Court of the City of Boston was established by statute, G. L. c. 185A, effective January 1, 1972, so as to provide a specialized forum to handle all criminal and civil matters regarding housing that arise in Boston. Cf. *Perez* v. *Boston Housing Authority,* 368 Mass. 333, 343 (1975). It is a court of limited jurisdiction, the scope of which is defined in G. L. c. 185A, § 3, set forth below.[4] In resolving the jurisdictional question in the present

---

[4] General Laws c. 185A, § 3, as amended by St. 1974, c. 700, § 1, provides in part: "The housing court shall have common law and statutory jurisdiction concurrent with the district courts and superior court of all crimes and of all civil actions, arising within the city, under sec-

case, we must determine if the causes of action alleged by the defendants are based on "any other general or special law, ordinance, rule or regulation" that is "concerned with the health, safety or welfare of any occupant of any place used, or intended for use, as a place of human habitation." See note 4 *supra.* The defendants argue that the plaintiff has enforced the law in a discriminatory manner and, by failing to maintain order, has deprived tenants of their right to safe and secure housing in violation of State and Federal laws (see note 3 *supra*), and that these laws are concerned with the health, safety or welfare of tenants. We believe that such a broad interpretation would be contrary to the legislative intent to grant only limited jurisdiction to the Housing Court, for if we were to adopt the defendants' position, the power of that court would extend to every matter affecting the health, safety or welfare of tenants in Boston. In view of our conclusions and reasoning we do not reach the issue whether it has been shown that this case arose under "any other general or special law, ordinance, rule or regulation." See note 3 *supra* for a summary of the State and Federal laws on which the defendants rely.

An examination of the legislative history of G. L. c. 185A reveals that the General Court did not intend to create a court to handle all problems affecting residents of Boston,

tions twenty-one to twenty-five, inclusive, of chapter two hundred and eighteen, sections fourteen and eighteen of chapter one hundred and eighty-six and under so much of sections one hundred and twenty-seven A to one hundred and twenty-seven F, inclusive, and sections one hundred and twenty-seven H to one hundred and twenty-seven L, inclusive, of chapter one hundred and eleven, so much of section sixteen of chapter two hundred and seventy, so much of chapters one hundred and forty-three, one hundred and forty-eight, chapter two hundred and thirty-nine of chapter four hundred and seventy-nine of the acts of nineteen hundred and thirty-eight, chapter six hundred and sixty-five of the acts of nineteen hundred and fifty-six, all as amended, and *any other general or special law, ordinance, rule or regulation as is concerned with the health, safety or welfare of any occupant of any place used, or intended for use, as a place of human habitation.* The housing court shall also have jurisdiction in equity, concurrent with the district courts, the probate courts, the superior court, the appeals court, and the supreme judicial court, of all cases and matters so arising" (emphasis added).

but rather its objective was to establish a separate, specialized court with expertise in the area of housing. Under c. 70 of the Resolves of 1966, the Legislature directed that a special commission be formed to investigate "the laws, codes, and regulations governing matters arising out of or connected with the relationship between landlords and tenants in the city of Boston, with a view to perfecting such laws ... and establishing a court, board or agency ... to afford, after prompt hearing, immediate relief to landlord or tenant ...." The special commission, in its report to the Legislature, recommended that a special Housing Court be created to expedite and improve the disposition of housing cases and that the court "have jurisdiction over every facet of landlord-tenant relations dealing with substandard dwellings." 1968 House Doc. No. 4498.[5] The special commission's report, many provisions of which were later adopted into law, leaves the unmistakable impression that the role envisioned for the Housing Court with respect to tenants was one of a vigilant enforcer of the laws relating to housing conditions and the physical environment within the immediate vicinity of tenants' homes.

This theme was later incorporated in the two proposed bills that were introduced in 1969-1971 and that were the basis for 1971 House Bill No. 5873, which, with minor modifications, became G. L. c. 185A, inserted by St. 1971, c. 843, § 1. Both House Bills, 1971 House Bills Nos. 956 and 4202 (see also 1969 House Bill No. 1160, 1969 Senate Bill No. 621, 1970 House Bill No. 4642, and 1970 Senate Bill Nos. 518, 1579), contained the same preamble, which, although it was subsequently deleted in the final 1971 House Bill

---

[5] In its proposed legislation, the special commission suggested that the Housing Court's jurisdiction extend to matters arising under certain enumerated statutes and under all general and special laws of the Commonwealth, city ordinances, and codes, rules and regulations of the Commonwealth, the city and government agencies or departments in so far as they are "applicable to or affect any building or dwelling used or intended for human habitation and every other structure or condition located within the same metes and bounds of the parcel of land as such building or dwelling, or any occupant thereof." 1968 House Doc. No. 4498, app. A.

No. 5873, elucidates the intent of the sponsors of the legislation which created the Housing Court. Cf. *Palmer* v. *Selectmen of Marblehead*, 368 Mass. 620, 627 (1975). The preamble read: "The need for adequately maintained residential housing is of grave concern, and the existing means of enforcing minimum standards of fitness for human habitation are unsuited to the volume and nature of the task. . . . A specialized, expert and remedial judicial procedure is urgently needed to stimulate better housing maintenance and better relations between property owners and occupants for the well-being of the public at large." 1971 House Bills Nos. 956, 4202.[6]

In addition to the above cited legislative history, an examination of G. L. c. 185A supports the conclusion that the

---

[6] 1971 House Bill No. 956 defined the subject matter jurisdiction of the Housing Court to include: "[A]ll causes arising under sections one hundred and twenty-seven A to one hundred and twenty-seven K inclusive of chapter one hundred and eleven of the General Laws and section fourteen of chapter one hundred and eighty-six of the General Laws and all defenses under section eight A of chapter two hundred and thirty-nine of the General Laws."

1971 House Bill No. 4202 provided an expansive definition of jurisdiction which more closely resembles that of G. L. c. 185A, § 3: "Section 4A. The court shall have and exercise concurrent original jurisdiction in rem and in personam over all causes, arising under sections one hundred twenty-seven A to one hundred twenty-seven K, inclusive, of chapter one hundred eleven of the General Laws, sections fourteen and eighteen of chapter one hundred eighty-six of the General Laws and chapter two hundred thirty-nine of the General Laws. . . .

"Section 4B. The court shall have concurrent jurisdiction over all matters and proceedings arising under any general or special laws of the commonwealth and codes, ordinances or regulations in effect in the city from time to time, (1) which affect the use, condition, construction, rehabilitation, maintenance or operation of any building or dwelling used or intended for human habitation and every other structure or condition located within the same metes and bounds of the parcel of land containing such building or dwelling, (2) which relate to the health, safety, or welfare of any occupant of any building or dwelling used or intended for human habitation, and (3) matters and proceedings under section five of chapter one hundred eleven of the General Laws, chapter one hundred forty-three of the General Laws, chapter one hundred forty-eight of the General Laws, section 16 of chapter 270 of the General Laws, chapter 479 of the acts of 1938, chapter 217 of the acts of 1939, and chapter 314 of the acts of 1962 as the foregoing general and special laws of the commonwealth and codes, ordinances, and regulations, enacted pursuant thereto, may be amended from time to time."

Housing Court does not have jurisdiction over this dispute. General Laws c. 185A, § 3, see note 4 *supra,* designates certain statutes and acts as within the jurisdiction of the Housing Court. Although this list cannot be all-inclusive considering the language of § 3, it is indicative of the type of actions that the Legislature had in mind when establishing the Housing Court. We observe that the laws specified in § 3 deal primarily with landlord-tenant relations (see G. L. c. 218, §§ 21-25, G. L. c. 186, §§ 14, 18, and G. L. c. 239), minimum housing standards as defined by the State Sanitary Code, the State and city building code, and the fire prevention laws (see G. L. c. 143, G. L. c. 148, G. L. c. 111, §§ 127A-127F, 127H-127L, and St. 1938, c. 479), and zoning regulations (see St. 1956, c. 665). Furthermore, G. L. c. 185A, § 16, provides for the appointment of housing specialists to aid the judge in the performance of his duties. The job qualifications for these positions provide further insight into the intended scope of jurisdiction of the Housing Court. Housing specialists are required by § 16 to be knowledgeable in the fields of maintenance, repair and rehabilitation of housing and in the area of landlord-tenant problems as they pertain to dwelling units.

In sum, we find no indication in either the statute or its legislative history that the seemingly broad, and perhaps ambiguous, language of G. L. c. 185A, § 3, can reasonably be construed to cover the present case. Furthermore, it would be illogical to do so. If we were to accept the defendants' position and conclude that the police conduct complained of in this case comes within the jurisdiction of the Housing Court, there would be no reasonable limits on that court's jurisdiction. There are many conceivable disputes that affect the "health, safety, or welfare" of occupants of housing, but not all are properly within the ambit of the Housing Court since it is a court of limited jurisdiction. Although we need not at this time delineate the exact scope of the Housing Court's jurisdiction, it is apparent from our prior discussion that police protection and allocation of police resources, despite their significant impact on the welfare and safety of Boston residents, are not suffi-

ciently related to housing to come within the Housing Court's jurisdiction as defined by G. L. c. 185A, § 3.

The case is remanded to the Supreme Judicial Court for the county of Suffolk where further proceedings are to be had to determine the merits of the controversy. In the alternative, in the discretion of the single justice, the case may be transferred to the Superior Court (see G. L. c. 211, §§ 3, 4A) for further proceedings on the merits. We do not at this time dissolve the injunction but leave it in the discretion of the single justice whether the injunction shall be dissolved or remain in effect pending further proceedings.

*So ordered.*