JEANETTE LEBLANC & others[1] vs. THE SHERWIN WILLIAMS
COMPANY & others.[2]

Worcester. January 10, 1990. - March 12, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Jurisdiction,* Housing court. *Housing Court,* Jurisdiction. *Lead Poisoning
Prevention. Negligence,* Manufacturer.

General Laws c. 185C, § 3, did not confer jurisdiction on the Housing
    Court to adjudicate tort claims brought by a residential tenant and her
    minor children against producers of lead for use in manufacturing lead-
    based paint, in which the plaintiffs alleged that the paint in various
    rooms in the leased premises contained hazardous levels of lead in vio-
    lation of G. L. c. 111, §§ 190-199A, and that the children had been
    injured by ingesting this paint. [891-897]


CIVIL ACTION commenced in the Superior Court Depart-
ment on August 15, 1986.

On transfer to the Worcester County Division of the Hous-
ing Court Department a motion to dismiss was heard by
*John G. Martin,* J.

Leave to prosecute an interlocutory appeal was allowed in
the Appeals Court by *Kent B. Smith,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Lawrence G. Cetrulo* for the defendants.

---

[1] Heath T. LeBlanc, Lisa A. LeBlanc, and Nathan Martin (added as a
party by an amended complaint) all minor children of Jeanette LeBlanc.
We shall refer to a single plaintiff.

[2] NL Industries, Inc., Eagle-Picher Industries, Inc., International
Smelting and Refining Company, SCM Corporation, and the Lead
Industries Association, Inc.

The landlord, Joseph Marderosian, is not a party to the appeal. The
Commonwealth and the city of Worcester had been added as defendants
by amended complaint but are not parties to the appeal.

*Neil T. Leifer* (*Robert J. Doyle* with him) for Jeanette LeBlanc.

NOLAN, J. This case involves a dispute about the proper scope of the jurisdiction of the Housing Court Department of the Trial Court. The plaintiff initially filed this action in the Superior Court in Worcester County against the family's former landlord, Joseph Marderosian, on behalf of two of her minor children. This action was then transferred to the Housing Court (the record is silent as to who transferred it). In December of 1987, the plaintiff amended the complaint to add, as defendants, five manufacturers and a trade association, the Lead Industries Association (LIA). The Sherwin-Williams Company, NL Industries, Inc., Eagle-Picher Industries, Inc., SCM Corporation, and the LIA filed a motion to dismiss on the ground that the Housing Court lacked subject matter jurisdiction. The Housing Court judge denied the motion to dismiss. The defendants then filed a petition to the single justice of the Appeals Court pursuant to G. L. c. 231, § 118 (1988 ed.), seeking relief from the denial of their motion and were granted leave to appeal. The defendants appealed, and we granted their application for direct appellate review.

We note the following allegations from the complaint. The defendants produce and market lead for use in lead-based paint. Various rooms in the premises leased by the plaintiff and her children, as well as common areas, contained hazardous levels of lead paint in violation of G. L. c. 111, §§ 190-199A (1988 ed.).[3] The lead used in the paint had been produced and sold by the defendants. The plaintiff's minor children were injured when they ingested the lead paint. As early as the 1920's, the defendants knew or should have known that lead-based paints posed an unreasonable risk to

[3]In 1971, the Legislature enacted St. 1971, c. 1081, an emergency law, entitled "An Act providing for a comprehensive program of lead paint poisoning prevention and control." Among its various provisions, codified at G. L. c. 111, §§ 190-199A, the act requires the owner of residential property to take affirmative measures to eliminate any sources of lead-based paint poisoning in any residential premises where a child under six is either residing or will reside due to a change in occupancy of the premises.

the health and welfare of young children residing in premises where such paints were used. Nevertheless, the defendants continued to furnish lead for paints to be used on surfaces. The children's injuries were a direct result of the defendants' actions. The plaintiff seeks money damages against the defendants asserting claims for negligent product design, breach of warranty, negligent failure to warn, and market share liability. The plaintiff also claims that the defendants, acting by and through the LIA, "conspired and/or acted in concert with each other to conceal" from the public the unreasonable risks and hazards which lead posed to young children.

General Laws c. 185C, § 3 (1988 ed.), sets forth the scope of the Housing Court's jurisdiction.[4] The plaintiff asserts that

---

[4]General Laws c. 185C, § 3, provides that: "The divisions of the housing court department shall have common law and statutory jurisdiction concurrent with the divisions of the district court department and the superior court department of all crimes and of all civil actions arising in the city of Boston in the case of that division, in the county of Hampden in the case of that division and within the cities and towns included in the Worcester county division, northeastern division and southeastern division, in the case of those divisions, under chapter forty A, sections twenty-one to twenty-five, inclusive, of chapter two hundred and eighteen, sections fourteen and eighteen of chapter one hundred and eighty-six and under so much of sections one hundred and twenty-seven A to one hundred and twenty-seven F, inclusive, and sections one hundred and twenty-seven H to one hundred and twenty-seven L, inclusive, of chapter one hundred and eleven, so much of chapter ninety-three A, so much of section sixteen of chapter two hundred and seventy, so much of chapters one hundred and forty-three, one hundred and forty-eight, and two hundred and thirty-nine, jurisdiction under the provisions of common law and of equity and any other general or special law, ordinance, by-law, rule or regulation as is concerned directly or indirectly with the health, safety, or welfare, of any occupant of any place used, or intended for use, as a place of human habitation and the possession, condition, or use of any particular housing accommodations or household goods or services situated therein or furnished in connection therewith or the use of any real property and activities conducted thereon as such use affects the health, welfare and safety of any resident, occupant, user or member of the general public and which is subject to regulation by local cities and towns under the state building code, state specialized codes, state sanitary code, and other applicable statutes and ordinances. The divisions of the housing court department shall also have jurisdiction of all housing problems, including all contract and tort actions which affect the health, safety and welfare of the occupants or owners thereof. . . ."

this tort action involves a housing problem and affects the health, safety, and welfare of occupants, and thereby falls within the plain language of G. L. c. 185C, § 3 (1988 ed.).[5] Moreover, according to the plaintiff, this action is sufficiently related to housing to fall within the Housing Court's jurisdiction. More specifically, the plaintiff contends that (1) the presence of lead-based paint is a "housing problem[ ]" under G. L. c. 185C, § 3; (2) her claims arise out of injuries suffered by her children when they ingested lead-based paint while occupants of residential premises; and (3) these injuries were a direct result of the defendants' acts of producing and marketing lead for use in lead paint.

The defendants, on the other hand, characterize the action as a traditional products liability action whereby the plaintiff alleges personal injury caused by a defective product. The defendants contend that the action is only remotely related to a housing problem and that, therefore, the Housing Court lacks subject matter jurisdiction to hear the action. We hold that G. L. c. 185C, § 3, does not confer jurisdiction on the Housing Court to adjudicate this product liability action. Adopting the broad interpretation put forth by the plaintiff would contravene the legislative intent to grant only limited jurisdiction to the Housing Court.

The Housing Court of Boston was established by statute, G. L. c. 185A, inserted by St. 1971, c. 843, effective January 1, 1972, so as to provide a specialized forum to handle criminal and civil matters regarding housing that arise in the city

---

[5]The plaintiff also suggests that this is a tort claim arising from the "condition . . . of any particular housing accommodations or household goods . . . situated therein or furnished in connection" therewith. See G. L. c. 185C, § 3. We disagree. The defendants' act of placing lead in the stream of commerce to be used in lead-based paint cannot be reasonably characterized as furnishing lead in connection with a housing accommodation. Moreover, this product liability action more accurately arises from the defendants' act of placing lead in the stream of commerce than from a condition of housing. We concentrate, as does the plaintiff, on the language in the statute giving the Housing Court jursidiction over "all housing problems, including all contract and tort actions which affect the health, safety and welfare of the occupants or owners thereof. . . ."

of Boston.[6] See *Police Comm'r of Boston* v. *Lewis*, 371 Mass. 332, 336 (1976). *West Broadway Task Force, Inc.* v. *Commissioner of Dep't of Community Affairs*, 363 Mass. 745, 753 (1973). This statute was the product of legislative consideration between 1966 and 1971. See *Police Comm'r of Boston* v. *Lewis*, *supra* at 337-339. In 1966, the Legislature appointed a special commission to investigate "the laws, codes, and regulations governing matters arising out of or connected with the relationship between landlords and tenants in the city of Boston, with a view to perfecting such laws . . . and establishing a court, board or agency . . . to afford, after prompt hearing, immediate relief to landlord or tenant . . ." The special commission recommended to the Legislature that it create a special Housing Court to expedite and improve the disposition of housing cases and that the court "have jurisdiction over every facet of landlord-tenant relations dealing with substandard dwellings. It should be a specialized court which can play a meaningful part in ameliorating urban life." 1968 House Doc. No. 4498 at 16. The commission stated in its report that "housing laws and regulations are a difficult and specialized area. . . . Courts must be made to understand housing problems. The appropriate knowledge of the law and deftness of handling the parties cannot be learned when judges must consider the wide variety of cases that they do." 1968 House Doc. No. 4498 at 13. The special commission's report, many provisions of which were later adopted into law, reveals that the role envisioned for the Housing Court with respect to tenants was one of a "vigilant enforcer of the laws relating to housing conditions and the physical environment within the immediate vicinity of tenants' homes." *Police Comm'r of Boston* v. *Lewis*, *supra* at 338. Two proposed bills which served as the basis for the

---

[6]As part of the reorganization of the Massachusetts trial court system, G. L. c. 185A and c. 185B (which created the Housing Courts in the city of Boston and Hampden county) were repealed by St. 1978, c. 478, § 91. In their stead, G. L. c. 185C, § 3, was inserted by St. 1978, c. 478, § 92. The relevant jurisdictional provisions of § 3 of G. L. c. 185A and 185B, and of 185C, prior to being amended by St. 1979, c. 72, § 3, were essentially the same.

final bill, 1971 House Doc. No. 5873, contained the same preamble. 1971 House Docs. Nos. 956, 4202. This preamble (although deleted in the final bill, 1971 House Doc. No. 5873) reveals the intent of the sponsors of the legislation. See *Police Comm'r of Boston* v. *Lewis, supra* at 339. The preamble read: "The need for adequately maintained residential housing is of grave public concern, and the existing means of enforcing minimum standards of fitness for human habitation are unsuited to the volume and nature of the task. . . . A specialized, expert and remedial judicial procedure is urgently needed to stimulate better housing maintenance and better relations between property owners and occupants for the well-being of the public at large." 1971 House Docs. Nos. 956, 4202.

The judicial history of the statute also supports our conclusion that the Housing Court lacks jurisdiction in the present case. In *Police Comm'r of Boston* v. *Lewis,* 371 Mass. 332, 333 (1976), we considered whether G. L. c. 185A, § 3, conferred jurisdiction on the Housing Court over an action by tenants in public housing projects to require the provision of twenty-four hour police protection. In concluding that the statute did not confer jurisdiction in that case, we found "no indication in either the statute or its legislative history that the seemingly broad, and perhaps ambiguous, language of G. L. c. 185A, § 3, [could] reasonably be construed to cover the . . . case." *Id.* at 340. We said that police protection and allocation of police resources, despite their significant impact on the welfare and safety of Boston residents, are not sufficiently related to housing to come within the Housing Court's jurisdiction.

In *Chakrabarti* v. *Marco S. Marinello Assocs.,* 377 Mass. 419 (1979), we concluded that the statute did not confer jurisdiction on the Housing Court over actions arising under G. L. c. 93A. We based our conclusion on the Legislature's

implied exclusion of c. 93A actions.[7] See *Chakrabarti* v. *Marco S. Marinello Assocs.*, *supra* at 422-423 & n.5. In *Haas* v. *Breton*, 377 Mass. 591 (1979), we held that the Housing Court lacked subject matter jurisdiction over an action by buyers of a home against the sewer contractor for negligent damage and improper repair to the septic tank system. In *Haas*, after a comprehensive review of the legislative history leading to the creation of the Housing Court, we concluded that "[t]o uphold the power of the court to entertain ordinary negligence actions between homeowners and contractors would be to dilute the expertise of that court and to delay the resolution of disputes properly before it." *Id.* at 600-601.

In 1979, after our decisions in *Chakrabarti* and *Haas*, the Legislature enacted certain amendments to G. L. c. 185C, § 3, which appear in St. 1979, c. 72, § 3, and which may give to the Housing Court subject matter jurisdiction over the kinds of disputes involved in *Chakrabarti* and *Haas*. St. 1979, c. 72, § 3.[8]

More recently, in *Boston* v. *Kouns*, 22 Mass. App. Ct. 506 (1986), the Appeals Court considered whether the Housing Court had subject matter jurisdiction over an action concerning the operation of a solid waste transfer station located

---

[7]When the Legislature initially drafted c. 185B, G. L. c. 93A was among the statutory provisions over which the Housing Court of the county of Hampden was specifically granted jurisdiction. In its final form, however, G. L. c. 93A was omitted from the grant of jurisdiction. See *Chakrabarti* v. *Marco S. Marinello Assocs.*, *supra* at 422 & n.5. Since our decision in *Chakrabarti*, the Legislature has amended G. L. c. 185C, § 3, to include certain c. 93A actions. See note 8, *infra.*

[8]By enacting St. 1979, c. 72, § 3, the Legislature added to the scope of the Housing Court's jurisdiction "actions arising . . . under . . . *so much of chapter 93A . . . and of equity* . . . as is concerned directly or indirectly with the health, safety, or welfare of any occupant of any place used, or intended for use, as a place of human habitation *and the possession, condition, or use of any particular housing accommodations or household goods or services situated therein or furnished in connection therewith. The divisions of the housing court department shall also have jurisdiction of all housing problems, including all contract and tort actions which affect the health, safety and welfare of the occupants or owners thereof* . . . ." (emphasis supplied). G. L. c. 185C, § 3, as amended by St. 1979, c. 72, § 3.

near a residential housing development. The plaintiffs in *Kouns* asserted that the transfer station was being operated in violation of G. L. c. 111, § 150A, and 310 Code Mass. Regs. § 18.00 (1980), and constituted a nuisance. See *id.* at 507. After tracing the judicial construction of G. L. c. 185C, § 3, and noting its legislative history, the Appeals Court concluded that "[w]hile the problems associated with solid waste transfer operations may have more significant impact on those residing nearby, we do not think those conditions are so particularly and 'sufficiently related to housing to come within the Housing Court's jurisdiction as defined by G. L. c. 185[C], § 3.' "[9] *Boston* v. *Kouns, supra* at 512, quoting *Police Comm'r of Boston* v. *Lewis, supra* at 340-341.

We examine G. L. c. 185C, § 3, as applied to the facts of this case, keeping in mind that we should avoid a statutory interpretation that "would . . . dilute the expertise of [the Housing Court] and . . . delay the resolution of disputes properly before it." *Haas* v. *Breton, supra* at 601.

The harm caused to minor children by the ingestion of lead-based paint may be characterized as a "housing problem[ ]," within the meaning of G. L. c. 185C, § 3. See G. L. c. 111, §§ 190-199A (concerned primarily with the presence of lead-based paint in residential premises). 1968 House Doc. No. 4498 at 9 (lead poisoning in children caused by poor housing). Report of the Special Legislative Commission on Lead Poisoning Prevention, The Continuing Toll 3, 10 (1987). In addition, this action may be characterized as a "tort action[ ] which affect[s] the health, safety and welfare" of the occupants of housing accommodations. However, "[a] general term in a statute . . . takes meaning from the setting

---

[9]Subsequent to the *Kouns* decision, the Legislature amended G. L. c. 185C, § 3, to include "the use of any real property and activities conducted thereon as such use affects the health, welfare and safety of any resident, occupant, user or member of the general public and which is subject to regulation by local cities and towns under the state building code, state specialized codes, state sanitary code, and other applicable statutes and ordinances." St. 1988, c. 83.

in which it is employed. The literal meaning of a general term in an enactment must be limited so as not to include matters that, although within the letter of the enactment, do not fairly come within its spirit and intent." *Haas* v. *Breton, supra* at 595, quoting *Kenney* v. *Building Comm'r of Melrose,* 315 Mass. 291, 295 (1943).

We construe G. L. c. 185C, § 3, in light of the purpose for which it was enacted. Our examination of the legislative history leading up to the enactment of G. L. c. 185C leads us to the conclusion that, despite recent expansions in the scope of its jurisdiction, the Housing Court remains a court of limited jurisdiction. Although certain tort actions fall within the court's jurisdiction, the Legislature did not intend to include this type of tort action within the jurisdictional grant. The Housing Court was established to provide for "[a] specialized, expert and remedial judicial procedure . . . to stimulate better housing maintenance and better relations between property owners and occupants for the well-being of the public at large." 1971 House Docs. Nos. 956, 4202. The defendants' only connection to these residential premises is the placing of an allegedly defective product in the stream of commerce. These defendants have no ongoing relationship with the plaintiff, and no duty to maintain the premises. Any duty which the defendants owe to the plaintiff arises from their act of placing an allegedly dangerous product in the stream of commerce.

The Legislature in enacting and in subsequently amending the statute did not intend to include this species of tort action within the jurisdiction of the Housing Court. Other provisions in G. L. c. 185C support this conclusion. General Laws c. 185C, § 16, provides for the appointment of housing specialists to aid the judge in the performance of his duties. The qualifications for these positions provide further insight into the intended scope of the court's jurisdiction. Housing specialists are required to be knowledgeable in the fields of maintenance, repair, and rehabilitation of housing, and in the area of landlord-tenant problems as they pertain to dwelling units. In addition, G. L. c. 185C, § 21, provides that all cases

in the Housing Court be heard without a jury (except where a jury is constitutionally required). However, parties trying product liability actions generally desire that their cases be heard by a jury. Thus it appears that the Legislature did not intend the Housing Court to have jurisdiction over traditional product liability actions. The plaintiff asserts that, because the particular product in question bears a unique relationship to housing, the Housing Court may properly adjudicate this product liability claim. This action is in essence, however, a traditional product liability action. The issues to be resolved at trial will be those issues which arise in all product liability actions and which do not require a specialized court for their adjudication. In fact, we believe that to uphold the power of the Housing Court to entertain the present action, "would be to dilute the expertise of that court and to delay the resolution of disputes properly before it." *Haas* v. *Breton, supra* at 601.

As we have noted, the Housing Court remains a court of limited jurisdiction with its expertise in the area of housing. While there are many conceivable disputes which may affect the health, safety or welfare of occupants of housing, not all are properly within the ambit of the Housing Court. We do not believe that the Legislature, in amending G. L. c. 185C, § 3, intended to obliterate the specialized character of the court by sweeping within its jurisdiction every "conceivable dispute[ ] that affect[s] the 'health, safety, [and] welfare' of occupants of housing." *Police Comm'r of Boston* v. *Lewis, supra* at 340. See *Boston* v. *Kouns, supra* at 511. We conclude that the Housing Court lacks subject matter jurisdiction over this case. Accordingly, pursuant to our powers under G. L. c. 211, § 4A (1988 ed.), we transfer this case to the Superior Court for a proceeding on the merits.[10]

*So ordered.*

---

[10]In the future, a judge in a court of limited jurisdiction, when faced with a serious jurisdictional issue, should consider avoiding a waste of judicial resources by asking the Chief Administrative Justice of the Trial Court to transfer the case, or the judge, or both, to the appropriate department of the Trial Court. See *Bagley* v. *Illyrian Gardens, Inc.*, 401 Mass. 822, 825 (1988); *Konstantopoulos* v. *Whately*, 384 Mass. 123, 129-130, 138 (1981).