SHARON RYAN *vs.* ANDREW J. KEHOE & another,. trustees.[1]

Suffolk. September 5, 1990. - November 20, 1990.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Housing Court,* Jurisdiction. *Jurisdiction,* Housing court, Fraudulent conveyance. *Fraudulent Conveyance. Statute,* Construction.

General Laws c. 185C, § 3, did not confer jurisdiction on the Housing Court to adjudicate a claim by a tenant against her landlord to set aside as fraudulent under G. L. c. 109A certain conveyances of real property by the landlord after a default had been entered against him in the Housing Court [639-640]; nor could the tenant's action be characterized as a nonstatutory suit in equity to set aside the disputed conveyances and, as such, within the equity jurisdiction of the Housing Court [640-641].

CIVIL ACTION commenced in the City of Boston Division of the Housing Court Department on March 11, 1983.

The case was heard by *William H. Abrashkin,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert F. Muse* for the defendants.

*James A. Frieden* for the plaintiff.

LYNCH, J. In 1979, after a default had been entered against him in the Housing Court, Andrew J. Kehoe conveyed certain real property into four trusts. The plaintiff subsequently brought the instant action in the Housing Court against Kehoe and his wife to set aside those conveyances as fraudulent under G. L. c. 109A, §§ 4, 7, 9 (1988 ed.). The judge found for the plaintiff, based in large part on his view of the evidence that Kehoe's motive in making the transfers

---

[1]Although Catherine M. Kehoe was a defendant below, the judgment was only against Andrew Kehoe. Catherine Kehoe, nevertheless, appealed.

was to shelter assets from a judgment creditor. The defendants appealed, arguing that the Housing Court lacks subject matter jurisdiction to adjudicate fraudulent conveyance actions brought under G. L. c. 109A (1988 ed.). We transferred the case to this court on our own motion, and we now hold that the Housing Court does not have jurisdiction to adjudicate c. 109A claims.

The Housing Court judge found the following facts. In the early 1970's the plaintiff, Sharon Ryan, became a tenant in a building Kehoe owned in the Hyde Park section of Boston. The plaintiff alleged that from the beginning of her tenancy the apartment was not weathertight, and that Kehoe demanded sexual favors of her as a condition of making the necessary repairs. The escalating landlord-tenant dispute culminated in litigation in the Housing Court, in which an eviction action brought by Kehoe and civil actions brought by the plaintiff were consolidated. The court entered a default (but not a final judgment) against Kehoe on October 16, 1979, after Kehoe failed to respond to several deposition notices and to an order compelling discovery.

At the time of his default, Kehoe owned seven parcels of property in Hyde Park and the Dorchester section of Boston. Kehoe also owned the building in which the plaintiff lived, which he held with his wife as tenants by the entirety. On November 21, 1979, Kehoe conveyed the seven properties into four revocable trusts for nominal consideration. The beneficiaries of the trusts were Kehoe's wife or their children. On the same day, Kehoe and his wife granted to Kehoe's sister a $20,000 mortgage on the building in which the plaintiff lived, ostensibly to secure existing debts. No promissory note was executed in connection with the mortgage instrument. After the November 21 conveyances, Kehoe owned virtually nothing of value except his equity interest in this building, which the court valued at $3,000-$4,000.[2]

---

[2]The judge's valuation took into account other indebtedness on the property, including a $28,000 first mortgage to the Massachusetts Cooperative Bank.

The court entered judgment against Kehoe for $11,532.04, which was affirmed on appeal. 17 Mass. App. Ct. 1112 (1984).

The plaintiff then brought this action in the Housing Court, naming Kehoe and his wife as defendants, to set aside the November 21, 1979, conveyances as fraudulent under G. L. c. 109A. Following a trial, the judge found that the disputed conveyances rendered Kehoe insolvent, since his remaining assets were insufficient to cover his probable liability to the plaintiff. Therefore, the judge ruled, the conveyances could be set aside under G. L. c. 109A, § 4 (1988 ed.).[3] Further, the judge ruled that the evidence at trial was sufficient to support a finding that Kehoe had actual intent to "hinder, delay or defraud" the plaintiff, permitting the conveyances to be set aside under G. L. c. 109A, § 7 (1988 ed.).[4] The judge, therefore, ordered that two of the properties which Kehoe had fraudulently conveyed be attached and sold at execution to satisfy the judgments entered in the prior litigation.

The defendants appeal from this decision on two grounds. First, they argue that the Housing Court exceeded its jurisdiction by adjudicating the c. 109A fraudulent conveyance claim. Second, the defendants cite a number of alleged errors of fact and law in the judge's findings of insolvency and fraudulent intent. Because we conclude that the Housing Court lacked jurisdiction to adjudicate the plaintiff's c. 109A claim, we do not reach the issue whether the judge erred in his rulings or findings on the merits of the case.

The scope of the Housing Court's jurisdiction is described in G. L. c. 185C, § 3 (1988 ed.). That statute grants the Housing Court subject matter jurisdiction over actions brought under certain enumerated statutes (c. 109A is not included), and over actions that directly affect the "health,

---

[3]"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." G. L. c. 109A, § 4.

[4]"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors." G. L. c. 109A, § 7.

safety and welfare" of housing occupants. In matters within these jurisdictional limits, the statute also grants the Housing Court the same powers as the Supreme Judicial and Superior Courts to enforce its judgments. In this case neither party contends that the Housing Court lacked jurisdiction over the initial litigation. The plaintiff argues that, in adjudicating the instant c. 109A action, the court was merely exercising its statutorily authorized power to enforce its own judgment. We disagree.

While the instant action is analogous in some ways to the mechanisms available to the court to enforce its judgments, we do not think the Legislature intended that the court adjudicate fraudulent conveyance claims for that purpose. The relevant provision of G. L. c. 185C, § 3, reads as follows: "[the Housing Court] shall have like power and authority for enforcing orders, sentences and judgments . . . as are vested for such or similar purposes in the supreme judicial or superior court department." The powers ordinarily available to these courts to enforce their judgments, such as execution and contempt, are distinguishable from this c. 109A action in that they generally do not involve adjudication of significant additional issues following the entry of judgment. The instant action, by contrast, requires a separate adjudication of issues unrelated to the original litigation, such as the solvency of the defendant, see G. L. c. 109A, § 4, or the existence of fraudulent intent, see G. L. c. 109A, § 7. Further, as a matter of procedural form, the instant action is not merely an action to enforce an existing judgment; it is a distinct suit whose goal is a separate judgment.

Nor does this action fall within the original jurisdiction of the court over matters related to the "health, safety and welfare" of housing occupants. G. L. c. 185C, § 3. This court has consistently construed this provision narrowly, strictly limiting the jurisdiction of the Housing Court lest we "dilute the expertise of that court and . . . delay the resolution of disputes properly before it." *Haas* v. *Breton*, 377 Mass. 591, 601 (1979). Accord *LeBlanc* v. *Sherwin Williams Co.*, 406 Mass. 888, 897 (1990). Thus, we have held, "[t]here are many conceivable disputes that affect the 'health, safety, or

welfare' of occupants of housing, but not all are properly within the ambit of the Housing Court since it is a court of limited jurisdiction." *Police Comm'r of Boston* v. *Lewis*, 371 Mass. 332, 340 (1976).

We recently examined this issue in *LeBlanc* v. *Sherwin Williams Co.*, 406 Mass. 888 (1990). In that case we held that G. L. c. 185C, § 3, does not confer subject matter jurisdiction on the Housing Court to adjudicate a products liability claim, *id.* at 891, even where that claim involves the health, safety, and welfare of housing occupants. *Id.* at 895. We reviewed the legislative and judicial history of G. L. c. 185C, § 3, extensively in *LeBlanc*, *supra* at 891-895, and it is not necessary to reproduce that discussion here. Rather, it will suffice to say that we construe § 3 in light of the Legislature's clear intent in enacting it, that is, to create a "vigilant enforcer of the laws relating to housing conditions and the physical environment within the immediate vicinity of tenants' homes." *Police Comm'r of Boston* v. *Lewis*, *supra* at 338.

Even where, as in this case, the claim underlying a c. 109A action touches on the health or welfare of housing occupants, such actions involve issues outside the court's expertise and legislative mandate in the area of housing. For example, fraudulent transfer cases might involve such issues as whether the defendant is solvent, see G. L. c. 109A, §§ 4, 6, whether the defendant is engaged in business, see G. L. c. 109A, § 5 (1988 ed.), or whether the conveyance was made with fraudulent intent. See G. L. c. 109A, § 7. To allow the Housing Court to hear such actions "would be to dilute the expertise of that court and to delay the resolution of disputes properly before it." *LeBlanc* v. *Sherwin Williams Co.*, *supra* at 897, quoting *Haas* v. *Breton*, 377 Mass. 591, 601 (1979). We conclude that there is not a sufficient nexus between c. 109A actions and housing to support the extension of the Housing Court's jurisdiction to such actions.

Alternatively, the plaintiff argues that this action might be characterized as a nonstatutory action in equity to set aside the disputed conveyances, and as such the action comes

within the equity jurisdiction of the Housing Court.[5] Again, we disagree. In *Foster* v. *Evans*, 384 Mass. 687, 694 (1981), we held "that a plaintiff who has obtained a judgment at law against a debtor, and who alleges that the judgment cannot be satisfied because the debtor has transferred his assets to a third party, has stated a case which is cognizable under the general principles of equity jurisprudence."[6] Thus, the judgment creditor in *Foster* was permitted to maintain such a nonstatutory action in a court of general equity jurisdiction, the Probate Court. G. L. c. 215, § 6 (1988 ed.).[7]

The Housing Court, however, does not have general equity jurisdiction. The statutory grant of jurisdiction to the Housing Court limits the court's equity powers to enumerated statutory claims and to certain cases affecting the "health, safety and welfare" of housing occupants. G. L. c. 185C, § 3. Nonstatutory actions to set aside fraudulent conveyances, like c. 109A actions, center on issues entirely unrelated to housing, notably whether the evidence supports a finding of fraud. See *Foster* v. *Evans, supra* at 698. To allow the Housing Court to adjudicate such issues would undermine the role envisioned by the Legislature for the court as a specialized forum for disputes relating to housing conditions. See *Police Comm'r of Boston* v. *Lewis, supra* at 338.

We conclude that the Legislature did not include fraudulent conveyance actions, whether nonstatutory or under

---

[5]The plaintiff does not argue that the court has statutory jurisdiction under G. L. c. 214, § 3 (1988 ed.).

[6]This venerable remedy in equity, known as a "creditor's bill," is recognized in a long line of this court's cases. See *Foster* v. *Evans*, 384 Mass. 687, 691 (1981), and cases cited.

[7]General Laws c. 215, § 6, states in pertinent part: "The probate and family court department shall have original and concurrent jurisdiction with the supreme judicial court and the superior court department of all cases and matters of equity cognizable under the general principles of equity jurisprudence and, with reference thereto, shall be courts of general equity jurisdiction . . . ."

c. 109A, within the jurisdiction of the Housing Court.[8] The judgment of the Housing Court is, therefore, reversed.

*So ordered.*

---

[8]The issue of lack of jurisdiction might have been resolved more easily, and judicial resources conserved, if the Chief Administrative Justice had assigned the Housing Court judge to the Superior Court for purposes of this case under G. L. c. 211B, § 9 (1988 ed.).

Apparently the Housing Court judge requested such a designation of the Administrative Justice of the Housing Court, but the designation was not made because the request was not forwarded to the Chief Administrative Justice of the Trial Court. The plaintiff has suggested that we make such a designation nunc pro tunc. We decline to designate the judge retroactively in the first instance, however, where the Chief Administrative Justice has taken no action under G. L. c. 211B, § 9.