COMMONWEALTH *vs.* STEPHEN J. LAPPAS.

No. 92-P-1631.

Suffolk. May 9, 1995. - September 29, 1995.

Present: KASS, JACOBS, & IRELAND, JJ.

*Housing Court,* Jurisdiction. *Jurisdiction,* Housing Court. *Jury and Jurors.*

The scope of G. L. c. 185C, § 3, as amended by St. 1988, c. 3, enlarging
jurisdiction of the Housing Court to cover "the use of any real property
and activities conducted thereon" as would affect the health and wel-
fare of the general public, extended to allegations of violations of G. L.
c. 148, §§ 23 and 27A, and § 8.02 of the Boston fire prevention code,
arising out of the storage of flammable liquids in two adjoining six-
story buildings in Boston that were used or classified as residential
buildings. [287-289]
At a criminal trial, error, if any, in the jury's having received for their use
in deliberations copies of the relevant statutes with the penalty provi-
sions included did not create a substantial risk of a miscarriage of jus-
tice, and, in any event, the defendant demonstrated no prejudice there-
from. [289-290]

COMPLAINT received and sworn to in the City of Boston
Division of the Housing Court Department on December 14,
1989.

The case was tried before *E. George Daher,* J.

*Robert A. Cohen,* Assistant Corporation Counsel, for the
Commonwealth.

*Bruce K. Stoler,* for the defendant, submitted a brief.

KASS, J. Following the decision in *Boston* v. *Kouns,* 22
Mass. App. Ct. 506 (1986), the Legislature by St. 1988,
c. 83, amended G. L. c. 185C, § 3, so as to enlarge once
again the jurisdiction of the Housing Court Department of
the Trial Court. See *LeBlanc* v. *Sherwin Williams Co.,* 406
Mass. 888, 895 n.9 (1990); *Springfield Hous. Authy.* v. *Bur-*

*gos*, 32 Mass. App. Ct. 673, 677 n.5 (1992).[1] The 1988 legislation added to the category of cases over which the Housing Court would have jurisdiction those that involved "the use of any real property and activities conducted thereon as such use affects the health, welfare and safety of any resident, occupant, user or member of the general public and which is subject to regulation by local cities and towns under the state building code, state specialized codes, state sanitary code, and other applicable statutes and ordinances."

The instant case requires further consideration of the jurisdictional boundaries of the Housing Court in light of the 1988 amendment. The scope of Housing Court jurisdiction has a copious legislative and judicial history, reviewed in decisions such as: *Police Commr. of Boston* v. *Lewis*, 371 Mass. 332, 337-340 (1976); *Chakrabarti* v. *Marco S. Marinello Assocs., Inc.*, 377 Mass. 419 (1979); *Haas* v. *Breton*, 377 Mass. 591, 596-599 (1979); *LeBlanc* v. *Sherwin Williams Co.*, 406 Mass. at 891-895; *Ryan* v. *Kehoe*, 408 Mass. 636, 638-640 (1990); *Patry* v. *Liberty Mobilhome Sales, Inc.*, 15 Mass. App. Ct. 701, 704-705 (1983); *Boston* v. *Kouns*, 22 Mass. App. Ct. at 509-511. Those decisions emphasize the limited jurisdiction of the Housing Court and a concern not to "dilute the expertise" of that court nor "delay the resolution of disputes properly before it" by bringing to that court disputes that do not require specialized knowledge and procedures and have only tangential connection with the health and welfare of inhabitants of rental housing. Housing Court judges, for example, may call upon the services of housing specialists who, under G. L. c. 185C, § 16, are to be knowledgeable about maintenance, repair, and rehabilitation of dwelling units and the problems of landlords and tenants. Those specialists are able to act as an informed investigative arm of the Housing Court, a resource not available to other courts.

Although the 1988 amendment to the jurisdictional provision in G. L. c. 185C was expansive, it did not extend to

---

[1]Housing Court jurisdiction had previously been adjusted by St. 1979, c. 72, § 3; St. 1987, c. 245; and St. 1987, c. 755, § 3.

product liability actions against the manufacturers of lead paint, *LeBlanc* v. *Sherwin Williams Co.*, 406 Mass. at 896-897, or a complaint of fraudulent conveyance under G. L. c. 109A, *Ryan* v. *Kehoe*, 408 Mass. at 640-641. In each of those cases, the controversy being pressed was collateral to disputes involving landlord and tenant or the condition of a habitation.[2] The 1988 amendment, the court decided, did not signify a legislative purpose to divert the Housing Court from its primary mission.

The genesis of the instant case was a nine-alarm fire that occurred on October 12, 1989, at two adjoining buildings, 81-83 Essex Street and 85-91 Essex Street, Boston, owned by the defendant Stephen J. Lappas. These were six-story buildings, characterized by the fire department in its report as "mercantile" although the department was to take a different slant on that score later in the proceedings. Less than one month before the fire, the Boston fire department had issued a cease and desist order to Lappas regarding cutting and welding operations at 85 Essex Street for which he did not have a permit. After the fire, the Commonwealth, acting through the Boston fire investigative unit, brought a criminal complaint in the Boston Housing Court against Lappas, charging him with violation of G. L. c. 148, § 23 (unlawful use and storage of flammable liquid), § 25B (unlawful use and storage of a liquid fuel space heater), § 27A (unlawful destruction of a fire extinguishing system), as well as violation of two provisions of the Boston fire prevention code. A jury returned verdicts of guilty on the charges of violating G. L. c. 148, §§ 23 and 27A, and § 8:02 of the Boston fire prevention code.

At the inception of the trial and, after judgment, by a motion for a new trial, Lappas challenged the jurisdiction of the Housing Court. His premises, he argued, were wholly mercantile and, therefore, not properly on the agenda of the Housing Court. In *Boston* v. *Kouns*, 22 Mass. App. Ct. at

---

[2]Failure by a landlord to remove lead paint from a dwelling in which a child resided would, of course, be a classic Housing Court case, one which deals with the condition of the leased premises.

507, the city sought preventive and mandatory injunctive relief in the Housing Court against the owners of a solid waste transfer station. We held that the conditions at the solid waste transfer station and the environmental law questions they raised were not so particularly "and sufficiently related to housing to come within the Housing Court's jurisdiction." *Id.* at 512, and see *Police Commr. of Boston* v. *Lewis*, 371 Mass. at 340-341. The Housing Court judge, in ruling that the Housing Court had jurisdiction over the Lappas case, correctly observed that the Legislature, in apparent reaction to *Boston* v. *Kouns*, had conferred jurisdiction on the Housing Court beyond cases related *particularly* to housing and had extended it to "the use of *any real property and activities conducted thereon* as such use affects the health, welfare and safety of any resident, occupant, user or member of the general public." G. L. c. 185C, § 3, as amended by St. 1988, c. 83 (emphasis supplied). See *LeBlanc* v. *Sherwin Williams Co.*, 406 Mass. at 895 n.9. As the *LeBlanc* and *Ryan* opinions instruct, however, the 1988 act does not mean that any controversy involving real property is Housing Court business. There must be some connection to the health, safety or welfare of occupants of housing. *LeBlanc* v. *Sherwin Williams Co.*, 406 Mass. at 897. By way of illustration, a controversy involving grading, seeding, and paving at a cemetery did not fall within the jurisdiction of the Housing Court in the absence of an effect on nearby residences. *St. Joseph's Polish Natl. Catholic Church* v. *Lawn Care Assocs, Inc.*, 414 Mass. 1003 (1993). Similarly, a landlord and tenant dispute involving the tax clause of a lease governing a commercial tenancy would not come within the Housing Court's jurisdiction.

As to Lappas, the city's complaint established prima facie links to effects on nearby residences by citing violations of fire safety statutes and ordinances. Fire hazards implicate not only the buildings in which they burn but surrounding buildings, including residences, to which fire may spread. Those links were forged by evidence that Lappas himself dwelled in 83 Essex Street and that 85 Essex Street was car-

ried on the records of the city as a residential use building. Moreover, the 1988 legislation emphasized particularly that the Housing Court was to have jurisdiction over cases involving the use of real property and activities on it involving health, welfare and safety that are subject to public safety statutes and regulations. Storage and use of flammable fluids and devices such as acetylene torches fall in that category, as the statutes previously adverted to illustrate. The Housing Court had jurisdiction over the complaint against Lappas.

There is a further claim of error that Lappas presses. The trial judge had instructed counsel to excise the penalty provisions from the copies of G. L. c. 148, §§ 25B and 27A, that were to be sent to the jury when they retired to deliberate. That was to be done because knowledge of sentencing consequences might distort the jury's function as dispassionate finders of the facts. See *Commonwealth* v. *Mutina*, 366 Mass. 810, 817 (1975). Counsel failed so to do and the position of the defendant on this score on appeal is even weaker than one who seeks to argue an objection or point not made before the trial judge. If any error occurred, it is subject to the substantial risk of a miscarriage of justice test. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

That unredacted statutes had gone to the jury room was discovered when the jurors, asking the judge for further explication of § 25B, attached to their written question their unredacted copy of that statute. The judge promptly gave the jury corrective instructions, stressing the jurors' fact finding function and charging them that they were to disregard the possible penalties which might be imposed on the defendant. See *Commonwealth* v. *Goodwin*, 356 Mass. 632, 634 (1970). Jurors are expected to heed admonitions by the court to disregard matters withdrawn from their consideration. *Commonwealth* v. *Smallwood*, 379 Mass. 878, 883 (1980). *Commonwealth* v. *Cameron*, 385 Mass. 660, 668 (1982). The possibility of prejudice to the defendant was remote. Knowledge by the jurors that Lappas might go to jail if found guilty was not likely to cause them to find him guilty of violating the public safety statutes if they were otherwise

minded to acquit him. The jurors were not exposed to the penalties attached to one of the statutes (G. L. c. 148, § 23) and one of the ordinances (§ 8:02 of the Boston Fire Prevention Code), which the jury found Lappas to have violated, suggesting the negligible effect on the jury of knowledge of penalties. There was no reversible error.

*Judgments affirmed.*